## City of Princeton, et al. v. Princeton Electric Light & Power Company.

(Decided November 17, 1915.)

### Appeal from Caldwell Circuit Court.

1. Municipal Corporations—Franchises—Ordinances—Construction.— A franchise being a special privilege bestowed by the government upon an individual, and which does not belong to the citizens generally, as a matter of common right, if there is any ambiguity in the ordinance granting the franchise it will be construed more strictly against the grantee.

2. Municipal Corporations—Ordinances—Grant of Franchise.—An ordinance of a city council granting a franchise for a term of years, without due advertisement, and without receiving bids therefor publicly, and awarding it to the highest and best bidder, is void and the grantee takes nothing thereby.

3. Municipal Corporations—Ordinances—Franchises.—An ordinance of a city council which undertakes to grant a franchise, the period of the exercise of which does not expire until more than twenty years after its granting, is void.

4. Electricity—Right to Produce Not Franchise.—The right to produce and sell electricity as a commercial product is not a prerogative of government, but is a thing which is open to all, and for that reason is not a franchise.

5. Municipal Corporations—Electricity—Franchise.—The right to use the streets, public places, and public ways of a municipality, for the erection of the poles, wires and apparatus of an electric light plant for the delivery of light and power to the consumers of it, is a franchise, which the municipality may grant.

6. Municipal Corporations—Franchises.—Neither can a municipality grant the privilege to one to use its streets and alleys to the exclusion of another to whom it may grant a franchise to use them for the same purpose.

7. Municipal Corporations—Electric Light Franchise—When Void.— An ordinance of the council of a city of the fourth class granting a franchise to an electric light company to use its streets and alleys for ten years, but the period of its exercise not to commence until four and one-half years after the granting of the franchise, is void, as against sound public policy.

8. Municipal Corporations—Public Policy—Public Nuisance.—Public policy is the same as the policy of the law, and is the principle which holds that no one can lawfully do a thing which tends to be injurious to the public, or is contrary to the public good, and must be found in the Constitution and statutes of the State and in the decisions of the courts.

9. Contracts—When Court Not Authorized to Declare Void.—Where there is no legislative prohibition of an agreement or contract, a court is not authorized to declare it void, unless it has a tendency to injure the public or is contrary to sound policy and good morals.

10. Municipal Corporations—Franchises—Regulation of Grant.—The policy of the legislation in this State has been to so regulate the granting of franchises, that the benefits arising from their exercise may be shared by the public, as well as the grantees.

11. Municipal Corporations—Franchises—Purchaser of.—The purchaser of a franchise should have a reasonable time before the beginning of the term of his franchise to make the necessary preparations to exercise the franchise in a way beneficial to himself and patrons, but the time should not be so great, as to indicate that the arrangement looks more to his benefits than to those of the public.

12. Municipal Corporations—Contracts.—The law does not imply any obligation or promise to pay by a municipal corporation, on account of benefits received.

13. Municipal Corporations—Contracts.—Those who make contracts with municipal corporations must, at their peril, know the powers of the officers of such corporations to make contracts and the manner in which they must make them.

14. Electricity—Withdrawal of License.—An electric light plant, which is a licensee in a municipality, is entitled to a reasonable notice

of the withdrawal of its license, and a reasonable time in which to move its property from the streets.

R. W. LISANBY and S. HODGE for appellants.

SELDEN Y. TRIMBLE, JOHN C. GATES and TRIMBLE & BELL, for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Reversing as to the City of Princeton and affirming as to R. W. Lisanby.

Princeton is a city of the fourth class. On the 8th day of October, 1896, the council of the city adopted a resolution directing its clerk to cause advertisement to be made for sealed bids for the sale of a franchise to furnish the city with electric lights for a period of ten years, the bids to be received on the 22nd day of October, thereafter. The bid of Eddins and Boyce was accepted, and it was thereafter granted to them by an ordinance, which, we assume, was duly adopted. On account of the conclusions we have reached, and which will be apparent from what is hereinafter said, it is not necessary to consider the various reasons which are urged by appellants, contending that the ordinance which granted the franchise is void.

The appellants contend that this franchise, if valid, expired on the first day of January, 1907, and the appellee contends that it did not expire until the first day of January, 1917, and this is the only question which we deem necessary to be determined with reference to the alleged franchise.

The resolution directing the clerk to advertise for sale the franchise described it as a "franchise for furnishing the city with electric lights for a period of ten years." The preamble of the ordinance which granted the franchise recited that the clerk had been directed to advertise for a sale of the franchise for ten years, and that he had acted in accordance with the direction. The first clause of the ordinance is as follows:

"The said J. T. Eddins and R. B. Boyce are hereby granted the exclusive right or franchise to manufacture and sell electric light within the corporate limits of the City of Princeton, Ky., for public, private, and commercial use, for and during the period of ten years, from and after January 1st, 1897."

The foregoing seems to definitely fix the time of the expiration of the franchise. However, section eleven of the ordinance granting the franchise provides that if the grantees desire to sell or transfer it before the time of its expiration, that the appellant, city, shall have the first right to purchase it, and that it shall be sold or transferred only after the city has received notice and refused to purchase it, within a reasonable time, at a sum equal to any bona fide offer that may be made for it by another. Section twelve of the ordinance provides that upon the expiration of the franchise, the city shall have the option of purchasing the electric light plant and all poles, wires, tools, machinery, or appurtenances belonging thereto, at a price to be agreed upon by the city and the grantees or their successors, and in the event of a disagreement, the price to be determined by appraisers. Section thirteen provides, that upon the expiration of the franchise and the failure or refusal of the city to purchase the plant, and the city should determine to grant another franchise, the grantees shall have an option upon it, provided they will accept it upon such reasonable terms as may be named by the city. By other provisions of the ordinance, it was provided that the grantees of the franchise should not sell, assign, or transfer it to a corporation, nor operate it as the agents of any corporation or a corporation, and that the failure or refusal of the grantees to comply with any of the conditions or requirements of the ordinance should have the effect to annul the ordinance and to forfeit the franchise. In the year 1904, however, the grantees of the franchise and others organized a corporation and the plant and franchise were transferred to it. Thereafter, in the latter part of the year 1906, the date does not definitely appear, the council of appellant city adopted an ordinance, in which it was recited that the franchise theretofore granted to Eddins and Boyce would expire on January 1st, 1907, and that the city had failed to exercise its option to purchase the plant and fixtures, on or before the expiration of it, and that Eddins and Boyce had transferred their plant and franchise to the appellee, and after said recitations, by its terms, undertook to grant appellees the exclusive right to manufacture electric light and electric power, or either, for public or commercial use, within the corporate limits of the city, for and during the ten years from and after January 1st, 1907, in

consideration of the acceptance and compliance with all the conditions thereinafter set out in the ordinance. The attempted sale of this franchise was never advertised, at all, nor was it offered for sale publicly, nor bids received for it. No attempt was made to comply with the requirements of Section 164, of the Constitution. Under the above recited arrangements, the appellee now contends that it has a valid franchise, and is now operating under same, and that all these transactions and stipulations amount to having received a valid franchise under the ordinance of 1906, to operate in the city from January 1st, 1897, until January 1st, 1917. We cannnot agree to the soundness of this contention. Section 164, of the Constitution, provides, as follows:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any and all bids."   *   *   *

The purpose of "due advertisement" provided for is to give information to all, who may desire to become purchasers of the franchise, and to enable them to make bids therefor, and to secure the municipalities against the loss of valuable rights for mere paltry considerations. It is to give information to all, who have an interest in the privileges to be sold, of what is proposed to be done, that citizens of a municipality may protect their rights in such matters in any proper way that necessity may create. The sale to the highest and best bidder is to enable the municipality to receive the value of the privilege to be granted away, and to prevent municipal councils from granting valuable rights and privileges to favorites without any sufficient consideration. It follows, as a natural sequence, that the only thing which can be lawfully sold is the thing which has been advertised for sale. A city council, after having advertised the sale of a franchise, with the right to exercise it for ten years, could not receive a bid and grant a valid franchise to exercise the privilege designated for fifteen or any other number of years. To attempt to do so would be the attempt to grant the right to exercise the privilege, with-

out due advertisement, as required by the Constitution. Where the council advertised to sell a franchise for ten years, a stipulation in the ordinance granting the franchise for ten years, providing that at the expiration of the ten years, that the grantee should have the right to have granted to him another franchise which the city might conclude to create and sell at that time, is invalid.

A reading of the ordinance granting the franchise from January 1st, 1897, until January 1st, 1907, and the ordinance granting a franchise to be exercised from January 1st, 1907, until January 1st, 1917, conclusively shows that neither the council of the city nor the appellee construed or understood the first named ordinance as granting a franchise for any longer period than until January 1st, 1907. At the time of the adoption of the last named ordinance, a resolution of the council is as follows:

"By ordinance, the Princeton Electric Light and Power Co. was granted an extension of ten years from Jan. 1st, 1907, on their franchise, by unanimous vote of the council."

Section 1st of the ordinance recites:

"That, whereas, the franchise heretofore granted by the City of Princeton to J. T. Eddins and R. B. Boyce * * * to manufacture and sell electric light within the corporate limits of the City of Princeton will expire January 1st, 1907, etc."

In the same section of the ordinance are the words: "Are hereby granted the exclusive right to manufacture and sell electric light and electric power, or either, for public or commercial use * * * for and during the ten years from and after January 1st, 1907, etc." Pending the negotiations for the attempted granting of the franchise, the proceedings of the council show the report of a committee, which recommended "letting another franchise for ten years from Jan. 1st, 1907, when old electric or present franchise expires;" and, further, the appointment of a committee, "with authority to close contract for lights and extend franchise for ten years from expiration of present one, with said electric light company." All of this makes exceedingly plain the construction put upon the proceedings by the parties themselves, at the time, as to number of years the franchise granted in 1896 was to extend, and when it should expire.

Further, the alleged franchise from 1907 until 1917 is materially different, both as to the thing granted and the terms and conditions upon which it was granted from the one, which was granted in 1896. Ignoring the contention that the franchise granted in 1896 had been forfeited by the grantees transferring it contrary to the provisions of the ordinance of 1896, it seems that the ordinance which purports to grant the appellee a franchise to be exercised from January 1st, 1907, until January 1st, 1917, was adopted and the privilege attempted to be granted for a term of years without advertisement and without receiving bids for the franchise publicly, and without a letting to the highest and best bidder. A franchise being a special privilege bestowed by the government upon an individual, and which does not belong to the citizens generally, as a matter of common right, if there is any ambiguity in the terms of an ordinance granting a franchise, as to the time in which it is to be enjoyed, it will be construed more strictly against the grantee. 15 Cyc., 467. The franchise granted in 1896 (if one was granted) expired on the first day of January, 1907, and the ordinance which purported to grant a franchise to be enjoyed from January 1st, 1907, until January 1st, 1917, was void and the grantees received nothing thereby. Frankfort Telephone Co. v. Board of Council of City of Frankfort, 125 Ky., 59, 100 S. W., 310; Nicholasville Water Co. v. Board of Council of Nicholasville, 18 R., 592, 36 S. W., 594; Monarch, etc. v. Owensboro City R. R. Co., 119 Ky., 939; City of Providence v. Providence Electric Light Co., 122 Ky., 237; Cum. T. & T. Co. v. Hickman, 129 Ky., 220; Christian-Todd Tel. Co. v. Com., 156 Ky., 557.

The ordinance directing the advertisement for sale of a franchise to furnish light and power from January 1st, 1917, until January 1st, 1927, was adopted in the year 1912. The conditions and requirements under which the franchise proposed to be sold, was to be exercised, was described as the same then enjoyed by the appellee under the franchise it then held. The appellee then did not hold any franchise, but the nature and character of the franchise was to be sought in the void ordinance of 1906. It did not have so much as a contract with the city, since the manner of its making was in direct conflict with the constitutional requirement. The appellee was the only bidder for the franchise proposed to be

sold in 1912, for the term beginning January 1st, 1917, and extending ten years thereafter. The ordinance adopted by the council, which attempted to create the proposed franchise and directed its advertisement and sale, did not create and offer for sale a franchise to use the streets and public ways and places of the municipality for the distribution of the electrical current and its delivery to the consumers, but, by its exact terms, attempted to create and offer for sale a franchise ''for the exclusive right to manufacture and sell electric light and power for public, municipal, and private commercial purposes, within the corporate limits of the City of Princeton, Ky., for and during a period of ten years, from and after January 1st, 1917, etc.'' In the ordinance adopted thereafter, the franchise granted was described ''as the exclusive right for and during the period of ten years, from and after January 1st, 1917, to manufacture and sell electric light and power within the corporate limits of the City of Princeton, Kentucky.'' By a clause of the ordinance after the granting of the franchise, it was given the privilege of the use of the streets and alleys for its poles and wires, as might be necessary for the lighting of the city. The franchise attempted to be granted is one which cannot be created and is beyond the power of the municipal authorities to grant. The right to produce and sell electricity as a commercial product is not a prerogative of a government, but is a business which is open to all and for that reason is not a franchise. The franchise which the municipality can grant is the use of its streets for the delivery of the light and power, produced by the electricity, to the consumers of it. Purrell v. McLean, 98 Md., 589, 15 Cyc., 467. Neither can a municipality grant the privilege to one to use its streets and alleys to the exclusion of another, to whom it may grant a franchise to use them for the same purposes. The franchise attempted to be granted i.. 1896 was subject to the above objections, but it having expired on January 1st, 1907, no consideration of it is now necessary. The same objection existed to the franchise attempted to be granted in 1906, but it was invalid for other reasons above stated. By the terms of the ordinance granting the franchise to be exercised from January 1st, 1917, until January 1st, 1927, the appellee was required to accept its terms and conditions by writing an acceptance upon the record of the city council,

and execute bond for the performance of the conditions and obligations undertaken by it. No time was fixed for the acceptance or execution of the bond, which, however, should have been done within a reasonable time to make the franchise irrevocable by the council of the city. It, however, neglected to accept the grant, as required, or to execute the bond, until in the year 1914, when the city council adopted an ordinance by which it undertook to revoke the grant of the franchise, and to declare that the appellee was using the streets and public ways and places of the city without authority of law. Since the filing of this suit, the appellee has made and tendered in court a bond, as required by the ordinance which granted the franchise. With the view entertained by us, with regard to the validity of the ordinance purporting to grant the franchise and the power of the council to create and sell a franchise for the purpose of creating and furnishing electric light and power in a city of the fourth class, it is unnecessary to determine the effectiveness of the repealing ordinance adopted by the council in 1914. The bid was received for the sale of the franchise from January 1st, 1917, until January 1st, 1927, on the 3rd day of June, 1912. This was a period of four and one-half years before the franchise can be enjoyed. If the grant is valid, it ties the hands of the city for over fifteen years. If it is within the power of the city council to create and grant a franchise which is not to be exercised for four and one-half years, it is within its power to grant one for five or a less number of years, and postpone the time of its exercise to fifteen or a greater number of years, so as not to carry the exercise of it beyond twenty years. This court has held that if the termination of the period for which a franchise is granted is more than twenty years after the granting of the franchise, it is beyond the power of the council to grant it. If the franchise granted to Eddins and Boyce in 1906, and the period of its exercise commencing as it did on January 1st, 1907, had been for twenty years, as contended by appellee, instead of ten, the attempt to grant it would have been void, because the period of its termination would have been more than twenty years after its granting. City Somerset v. Smith, 105 Ky., 678; Hilliard v. Fetter Lighting & Heating Co., 127 Ky., 95.

Putting aside any objection to the franchise attempted to be granted in 1912, on account of the want

of power in the municipal council to create or grant such a franchise, and passing over the effect of the ordinance purporting to revoke the ordinance granting the franchise, the question is presented, as to whether or not a municipal council of a city of the fourth class can grant a valid franchise to a public service corporation, for the use of its streets and public ways for its apparatus, for the period of ten years, the time of its exercise to commence at the termination of four and one-half years after the granting of it? It is insisted that such a proceeding is void, as being contrary to sound public policy. Public policy has been defined as being the equivalent to the policy of the law, and is a principle of law which holds that no one can lawfully do a thing which tends to be injurious to the public or is contrary to the public good. 32 Cyc., 1251. The good of the community, in certain cases, is relied upon to restrict the freedom of contracting. The public policy must be looked for in the constitution and statutes and the decisions of the courts of last resort of a state, and where there is no legislative prohibition of a certain character of agreement before a court is authorized to declare it void, it must appear that such an agreement or contract has a tendency to injure the public or is against the public good, or is contrary to sound policy and good morals. 9 Cyc., 482. There is no legislative prohibition, in this state, of the granting of a franchise for ten years, and postponing the commencement of the exercise of it for four and one-half years after the granting of it. Looking to the policy of the law to be deduced from the Constitution and statutes, it is apparent that the requirements of our Constitution and the statutes, which govern the granting of franchises by municipal corporations, were intended to remedy serious wrongs under which the public was suffering. Theretofore, the valuable franchises, which should be enjoyed primarily for the benefit of the public, as well as the grantees of them, were often granted to individuals for a great number of years, more than the lifetime of a generation, upon terms which the changing conditions of humanity rendered irksome and burdensome and stood in the way of public achievement. The grants oftentimes tied the hands of posterity to the chariot wheels of an individual who was lucky enough to have obliging friends in authority or designing enough to control the authorities. Light in the street and public places

has become an essential to the happiness and proper enjoyment of their property, of the people of cities and towns. The dwellings of the citizens must be lighted by some producing power, beyond the ownership of the ordinary citizen. The power and effectiveness of lighting and power producing apparatus has been revolutionized within the lives of the present generation, and the inventive genius of the time adds to its efficiency and cheapness from day to day. To grant franchises for the production of light and power, not to be exercised until an unreasonable distance of time has expired, will oftentimes have the effect of denying to the people of muncipalities the opportunity of enjoying the best, latest, and cheapest creations of genius, until the period of the franchise and its postponement has expired. The policy of our legislation has been to attempt to so regulate the granting of franchises that the benefits of their exercise may be shared by the public, and to prevent them being granted primarily, for the benefit of the grantees. The purchaser of a franchise should have a reasonable time, before the beginning of the term of his franchise, to prepare the necessary machinery and fixtures to enable him to exercise his franchise in a way beneficial to himself and the patrons of the operations of his franchise, but the time should not be so great as to make it apparent that the arrangement looks more to the benefits of the purchaser of the franchise than it does to those of the public. The grant of a franchise to furnish light and power, in a city of the fourth class, for the period of ten years, to be exercised, after a time which is four and one-half years after the granting of the franchise, is an unreasonable length of time between its granting and exercise, and such a proceeding tends to be injurious to the public interests, and is therefore void.

The appellee has been operating, at least, since January 1st, 1907, without any franchise and without any valid contract with the city so to do. The appellant, city, together with other relief, seeks to recover from appellee the sum of $7,942.50, which is made up of sums of money paid to appellee by the city, during five years last past, for lights and power furnished the city, and alleged to be over and above what such lights and power so furnished were reasonably worth, and rent for the use of the streets by its poles and wires during the same time. The ordinance of 1906, which attempted to grant a fran-

chise to appellee from January 1st, 1907, until January 1st, 1917, viewed as a contract to exercise the privilege of furnishing the lights for a term of years, without advertisement of its making, or allowing competetive bidding, or the receipt of bids publicly, or awarding to the highest and best bidder, falls within the inhibition of Section 164, of the Constitution, *supra,* and is void. If the sums collected from the city for the use of the lights and power by the appellee had not already been paid, and appellee was attempting to coerce collection by law, there is no doubt that its demands would be denied. The law does not imply any obligation or promise upon the part of a municipal corporation to pay on account of having received benefits. The only powers such a corporation has arise from the laws creating it, and the municipality cannot be bound by the contracts of its officers which they have no power to make, and if the municipality receives benefits under such void contracts, the law does not raise any promise to pay for the benefits. If there is no obligation created by the void contract, the law does not create an obligation. The laws provide how municipalities may bind themselves, and the contracts to be obligatory must be made in the manner the laws prescribe. A different rule prevails in regard to municipalities to that which governs private persons and private corporations. The persons who contract with municipal corporations must, at their peril, know the rights and powers of the officers of such municipalities to make contracts and the manner in which they must make them. Any other rule would destroy all the restrictions which are thrown around the people of municipalities for their protection by the statute laws and the constitution, and would render abortive all such provisions. The rule in certain instances may be harsh, but no other is practical. Trustees of Belleview v. Hohn, etc., 82 Ky., 1; Murphy v. City of Louisville, 9 Bush, 189; Covington v. Hallam & Myers, 16 R., 128; Owensboro v. Weir, etc., 95 Ky., 195, 24 S. W., 115; District of Highlands v. Michn, 32 R., 761; Floyd v. Allen, 137 Ky., 575; City of Newport v. Schoolfield, 142 Ky., 287; City of Louisville v. Parsons, 150 Ky., 420; Grinstead v. Monroe County, 156 Ky., 296; Floyd County v. Oswego Bridge Co., 143 Ky., 693; Perry Co. v. Engle, 116 Ky., 594; Worrell Mfg. Co. v. City of Ashland, 159 Ky., 656. The decisions in Frankfort Bridge Co. v. City of Frankfort, 18 B. M., 41; Nicholasville Water Co.

v. Board of Council, 18 R., 592; Board of City of Frankfort v. Capital Gas Co., 29 R., 1114; and City of Providence v. Providence Electric Light Co., 122 Ky., 237, referred to and relied upon by counsel, to the extent that they held a doctrine contrary to the above, were overruled by this court in the recent case of Worrell Mfg. Co. v. City of Ashland, *supra*.

There was no legal obligation upon the part of appellant, city, to pay the sums to the appellee, which it now seeks to recover from it, and could not have been coerced to do it. The council had the power to create a binding obligation upon the city to pay for the lights and power, if it had gone about doing so in the manner provided by law. The proof fails to show, that the sums charged and paid were unreasonable, or in excess of the value of the services rendered the city for which the sums were paid. The city received the benefits and voluntarily paid for them. The payments were not induced by fraud nor made under any mistake, which is alleged or appears upon the record. The payments were made, as we presume, upon resolutions of the council, which acted upon a full knowledge of the facts. Because the city would not be compelled at law to pay for the lights and power furnished it by appellee, if sought to be coerced to do so, it does not follow as a natural sequence, that it can recover of the appellee the sums paid, under the conditions detailed above, in a court of equity. The city, resisting a claim made against it under a void contract, or an obligation sought to be placed upon it through an unauthorized assumption of power by its officers, is in a different attitude from what it is, when it comes into court asking relief. When it seeks equitable relief, it must comply with the ancient rule and "do equity." This principle was adhered to in the recent case of Miles Auto Co. v. Dorsey, 163 Ky., 692. In the case at bar there seems to be an absence of any ground for equitable relief against appellee for the recovery of the sums sued for.

While the appellee has not a franchise to use the streets and public ways for the extending of its wires, erection of poles, and other apparatus placed in and along the streets, the proceeding under which it came into the city and its streets amounts to a license to do so, and it is not a mere trespasser. The city has the power to revoke the license, and it seems has done so. A

licensee must always act with the knowledge that the license can and may be withdrawn. The circumstances are such as to protect it against being summarily ousted from the streets and public ways and places of the city. It appears from the proof, that upon the faith of the ordinance, which attempted to grant a franchise to appellee, extending from January 1st, 1917, until January 1st, 1927, the appellee has expended large sums of money in securing and preparing a new location for the main portion of its plant, and at the present time furnishes light to a majority of the citizens of the city, in their dwellings and business houses; to the churches, schools, and public buildings, and power for the operation of the city waterworks plant, and to railroad shops, which are in the city, and has entered into various contracts with different parties to furnish light and power, and upon which the parties are relying for the conduct of their business and avocations, and there is no other plant for the generation of electric light and power in the city. These engagements, however, do not protect the appellee from an ouster from the streets and public ways, but should be considered in fixing the time when the ouster should be put into effect. Citizens of a municipality may compel a grantee of a franchise, where there are provisions in it for their benefit, to exercise the franchise (Cumberland T. & T. Co. v. Hickman, 129 Ky., 220), but a city could not be required to allow the use of its streets by a public service corporation without a franchise, because it had entered into obligations with citizens, which it could not perform without a franchise. It was its duty to obtain a franchise before entering into such obligations. The appellee, however, having been permitted by the council of the city under different grants of permission to use the streets and public ways for such a length of time, and to make such large investments upon the faith of such permissions, and the public interests affected, the appellee should have a reasonable time and opportunity to remove its property from the streets and public ways and places of the city, or to acquire a franchise, and in view of the large interests affected, it should have one year from the rendition of the judgment, in accordance with this opinion, to remove its property or to acquire a franchise. East Telephone Co. v. City of Frankfort, 141 Ky., 591.

The petition of R. W. Lisanby, to be made a party plaintiff in this action, was properly rejected. The city as a corporate entity was maintaining this suit for an infraction of its rights, and its petition contained all the causes of action, and sought all the relief which the petition of Lisanby alleged or sought. He could not, as a citizen of the city, maintain a suit, which was already being prosecuted by the city, upon the ground that the officers of the city might thereafter conclude to discontinue the suit. The petition offered to be filed contained nothing which was not already alleged in the petition of the city, and no sufficient reason was given in it to authorize the petitioner to intervene.

It is therefore ordered that the judgment appealed from be reversed upon the appeal of the City of Princeton, and affirmed upon the appeal of R. W. Lisanby, and the cause is remanded with directions to proceed in conformity with this opinion.

All members of the court sitting.