**BEREA COLLEGE UTILITIES, a Department of Berea College, Appellant,**

v.

**CITY OF BEREA, a Fourth Class City, Appellee.**

Court of Appeals of Kentucky.

June 7, 1985.

Flem Gordon, Gordon, Gordon & Craig, PSC, Owensboro, for appellant.

Katherine R. Randall, Katherine K. Yunker, Brown, Todd & Heyburn, Lexington, and James T. Gilbert, Coy, Coy & Gilbert, Richmond, for appellee.

William Thielen, Lexington, for amicus curiae Ky. Mun. League.

Before CLAYTON, GUDGEL and LESTER, JJ.

CLAYTON, Judge.

This is an appeal by Berea College Utilities, a Department of Berea College, from a judgment of the Madison Circuit Court upholding the validity of two ordinances of the City of Berea. The ordinances, numbers 3–83 and 4–83, create franchises for the distribution of electricity and water within the City of Berea. Included among the provisions of the ordinances are requirements for (1) a minimum bid amount equal to 3% of the gross service revenues generated by the franchises within city corporate limits and (2) quarterly payment of a minimum annual franchise fee equal to 3% of gross service revenues for any utility operating without a valid franchise. On appeal, the utility argues that § 164 of the Kentucky Constitution and KRS 96.010 do not permit municipalities granting a fran-

chise or privilege to impose a minimum bid requirement as a precondition to awarding a public utility franchise. It is also contended by appellant that the 3% franchise fee is a de facto tax which the city is prohibited from imposing upon the utility under KRS 136.120 as incorporated in KRS 92.281. We disagree with both these propositions and affirm the judgment of the lower court.

On March 15, 1983, the Berea City Council gave final approval to the challenged ordinances. The appellant, most of whose 3,500 customers reside within the city, submitted bids for a fixed sum. The bids, which were the sole bids submitted, were opened May 17, 1983, and immediately rejected by the city as being nonresponsive. An action for declaration of rights pursuant to KRS 418.040 was then filed by the appellant in Madison Circuit Court. The court, in a well-written opinion, concluded that the language of KRS 96.010 providing for sale of the franchise to the "highest and best bidder on terms that are fair and reasonable to the city ..." does not preclude the city from requiring a minimum bid. In a similar vein, the trial court determined that any franchise fee, regardless of its form as a 3% charge against gross revenue or a lump sum amount, would ultimately be a franchise fee charged back to the consumer by the utility and, therefore, not a tax.

## I. MINIMUM BID REQUIREMENTS

The appellant's first argument focuses on the phrase "highest and best bidder" as found in § 164 of the Kentucky Constitution and KRS 96.010. Centering upon that single phrase, the utility contends that as sole bidder, its bid was automatically best and highest and, therefore, could not be rejected. In full, the first of those two provisions, § 164, provides that

No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or making any contract in reference thereto, for a term exceeding 20 years. Before granting such franchise or privi-

lege for a term of years, such municipality shall first, after due advertisement, receive bids therefore publicly, *and award the same to the highest and best bidder; but shall have the right to reject any and all bids.* (our emphasis)

The second one, KRS 96.010, adds that (1) At least eighteen (18) months before the expiration of any franchise acquired under or prior to the present Constitution (1890) the legislative body of each city shall provide for the *sale of a new franchise to the highest and best bidder on terms that are fair and reasonable to the city, the purchaser of the franchise and to the patrons of the Utility.* The term shall specify the quality of service to be rendered, and, in cities of the first class, the price that shall be charged for the service. (our emphasis)

It is readily apparent that neither quotation expressly authorizes a minimum bid requirement. Nor have we discovered any case law interpreting § 164 or KRS 96.010 to authorize such a requirement. However, neither does either provision expressly prohibit such a precondition. Instead, both provisions would appear to implicitly authorize a minimum bid requirement, as § 164 empowers franchisors to "reject any and all bids" while KRS 96.010 specifies sale of franchises "on terms that are fair and reasonable to the city, the purchaser of the franchise and to the patrons of the utility." Given this additional language and the monopolistic nature of public utilities, an interpretation permitting franchisors to impose a minimum bid requirement on franchises is not only logical, realistic and just, but necessary.

The purpose of § 164 is to prevent city councils from selling, at an inadequate price, the rights and privileges of the citizens of Kentucky. *Stites v. Norton*, 125 Ky. 672, 677, 101 S.W. 1189, 1190 (1907). To this end, the public disposition of such valuable rights under this section is intended to provide those same citizens with the "greatest price possible." *Id.* Were we to strike down the ordinances involved due to their minimum bid provision, a public utili-

ty, or any service provider, as sole bidder on a franchise would be able to acquire these valuable rights on a bid of any amount no matter how minimal; even a bid of a single dollar would be sufficient under the appellant's interpretation of § 164 as it would be the best and highest bid. Given the current lack of competition among public utilities, which in most cases have been operating in Kentucky cities exclusively for many years, the possibility of such unrealistically low bids is certainly not remote. Therefore, to deny cities such as Berea the authority to impose minimum bid requirements, would allow public utilities to buy at an inadequate price the valuable rights of the citizens. If § 164 is intended to prevent a city council from selling franchises at an inadequate price, it cannot logically be interpreted to allow public utilities to buy the same rights at equally inadequate prices. To this end, the framers of our most recent Constitution, inserted in § 164 the final phrase, "but shall have the right to reject any and all bids." Obviously included within this express power is the right to reject all bids which the franchisor deems inadequate in amount or terms. So long as a city council acts neither arbitrarily nor corruptly in rejecting bids which fail to meet its minimum bid requirement, the legislative power afforded to the council and its concurrent discretion will not be questioned by the courts. *See Goover v. City of Irvine*, 222 Ky. 366, 369, 300 S.W. 904 (1927). In sum then, minimum bids are simply a legitimate means by which a county, city, town or taxing district may sell a franchise "on terms that are fair and reasonable to the city, the purchaser of the franchise and the patrons of the utility."

KRS 96.010. Where the amount of such minimum bid requirements is established without arbitrariness or corruption, it cannot be successfully challenged under § 164 or KRS 96.010.

## II. PERCENTAGE FRANCHISE FEES AS A DEFACTO TAX

■ There is little need for extended exposition on this point, for while Kentucky courts have not yet had occasion to address this issue in this exact context, it has frequently been reviewed by courts in other states. The common conclusion shared by those opinions is that a franchise fee such as that involved is not a tax, but is instead a charge bargained for in exchange for a specific property right, i.e., rental or compensation for use of public streets. *See City of Plant City v. Mayo*, 337 So.2d 966 (Fla.1976); *City of Baker v. Montana Petroleum Co.*, 99 Mont. 465, 44 P.2d 735 (1935). *See also Louisville City Railway Co. v. City of Louisville*, 4 Bush 478 (1868); *City of Newport v. South Covington & Cincinnati Street Ry. Co.*, 89 Ky. 29, 11 S.W. 954 (1889) (relating to imposition of per car franchise fee on railroad company franchises).

The judgment of the Madison Circuit Court is affirmed.

All concur.