OWENSBORO GRAIN COMPANY and Ronald J. Prater, Movants,

v.

OWENSBORO RIVERPORT AUTHORITY and ADM/Growmark River System, Inc., Respondents.

No. 90–SC–178–DG.

Supreme Court of Kentucky.

Sept. 26, 1991.

As Modified on Denial of Rehearing Dec. 19, 1991.

**606**

Ronald M. Sullivan, Holbrook, Wible, Sullivan & Helmers, P.S.C., Owensboro, for movants.

Charles J. Kamuf, Rummage, Kamuf, Yewell, Pace & Condon, R. Scott Plain, Wilson, Wilson & Plain, Owensboro, for respondents.

STEPHENS, Chief Justice.

The sole question presented on this appeal is whether the Owensboro Riverport Authority (ORA) violated Section 164 of the Kentucky Constitution regarding the offer and acceptance of bids for a public franchise, by allowing those making bids to offer alternative proposals to the minimum bid specifications.

Specifically, the question is, do alternative bid proposals prevent fair competition by vitiating the possibility of an exact comparison of bids?

The ORA advertised for bids for a grain loading franchise located on its riverfront premises pursuant to KRS 65.510 and Section 164 of the Kentucky Constitution. The bid advertisement listed minimum bid specifications required in order for a prospective bid to be considered. The mandated specifications were listed as follows:

* Term—1 year
* Facility shall be used solely for the transferring of grain and grain products.
* Within 45 days from the date of lease, successful bidder will complete construction of a truck to rail transfer pit of not less than 8,000 bushels/hour.
* Within 45 days from the date of lease, successful bidder will complete construction of a holding bin of not less than 25,000 bushel capacity.
* Successful bidder shall lease office space from ORA at the rate of $50.00/month.
* Successful bidder shall be responsible for providing phone service and all marketing for facility.
* Successful bidder shall be responsible for weighing and grading of all products.

* ORA shall provide labor to transfer grain products based upon the following rates:
Rail to Barge    2.5¢/bushel
Truck to Barge   2.5¢/bushel
Truck to Rail    2.5¢/bushel
Barge to Rail    $1.25/net ton
Barge to Truck   $1.00/net ton
* Successful bidder shall agree to transfer 1,250,000 bushels/annually.
* The Owensboro Riverport may elect to purchase equipment installed by successful bidder by granting a rebate of 1/2¢/bushel on product handled through said equipment.
* All equipment is to be new and is subject to approval of the Owensboro Riverport.

Additionally, the bid document directed bidders to specify any exception to the specifications upon submission of the bid.

The appellant, Owensboro Grain Company, excepted to several minimum requirements in a written bid proposal submitted to ORA. The appellant's exceptions to the bid specifications were, a proposal to pay a higher rate per bushel of grain transferred; an offer to guarantee transfer of more grain during the franchise term; and, a demand that Owensboro Grain be awarded an exclusive right to load grain at all Daviess County ORA facilities.

The appellee, ADM/Growmark River System, Inc. (ADM), also excepted to certain bid terms. ADM proposed a two-year lease which was presented with a demand that ADM be afforded the right to exercise five additional two-year renewal options rather than the one-year specification. Other alternative proposals by ADM included more favorable terms than those listed by ORA, such as the construction of a larger capacity holding bin to be completed prior to the minimum specification date.

Upon consideration of the submitted bids, Owensboro Grain's bid was disqualified as unresponsive and in conflict with a prior commitment that allowed another entity to transfer grain within Daviess County. Following Owensboro Grain's disqualification, ADM was the sole remaining bidder. ORA's Board of Directors accepted ADM's bid and awarded it the franchise.

Owensboro Grain, thereafter, filed a motion for a temporary injunction in Daviess Circuit Court requesting the franchise award to ADM be set aside as violative of Section 164 of the Kentucky Constitution and that the lease be rebid. The Daviess Circuit Court overruled the appellant's motion and granted summary judgment in favor of ADM. The Court of Appeals affirmed, and this Court accepted discretionary review.

On appeal, the appellant asks this Court to set aside the lease award to ADM and to order a rebid for the grain loading franchise. Appellant's basis in this action is, therefore, not that it should have been awarded the franchise as a result of it being the "highest and best bidder"; but rather that the award to ADM was violative of Section 164 of the Kentucky Constitution and unfair to the general public. That part of the Kentucky Constitution is as follows:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege or make any contract in reference thereto, for a term exceeding 20 years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertising, receive bids therefore publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids...." *Id.*

Owensboro Grain argues that ORA allowed bidders to "write their own terms" thereby preventing fair competition and the exact comparison of bids.

In support of his argument, the appellant cites this Court's Opinion, *City of Princeton v. Princeton Electric Light & Power Co.*, 166 Ky. 730, 179 S.W. 1074 (1915). The franchise award in that case was invalidated based on the fact that it exceeded the advertised lease term. Although the bidding process in that case did not make use of minimum bid specifications in its advertisement, the appellant maintains that the expansion of the lease term in the case at bar should be held void based on the same rationale.

*City of Princeton* held that the granting of a franchise for an expanded term of years would be "the attempt to grant the right to exercise the privilege without due advertisement, as required by the Constitution." *Id.* 179 at 1076. Appellant further argues that by allowing ADM to write its own terms, ORA has wrongly, but effectively, excluded all other public entities from ORA's grain loading facilities for a twelve year period.

ADM's response is largely based on the holding of *Berea College Utilities v. City of Berea*, Ky.App., 691 S.W.2d 235 (1985). The pertinent issue in that case was the constitutionality of minimum bid specifications. Appellee maintains that the franchise award is constitutionally intact as the practice of soliciting minimum bid specifications was upheld in *Berea College*. *Id.* at 237. The appellee further asserts that Owensboro Grain had equal opportunity to except from the minimum bid specifications listed, specifically the lease term.

■ *Berea College* is distinguishable from the case at bar in that the minimum bid specifications were solely monetary preconditions to the franchise award. The required provisions in that case were "a minimum bid amount equal to 3% of the gross service revenues generated by the franchises within city corporate limits and quarterly payment of a minimum annual franchise fee equal to 3% of gross service revenues for any utility operating without a valid franchise." *Id.* at 235. *Berea College* is fact specific, contrary to appellee's expanded interpretation that the holding recognizes all minimum bid specifications as constitutionally valid. The concern in *Berea College* was the possibility of "unrealistically low bids." *Id.* at 237. The allowance of minimum bid specifications as to the price acts to circumvent the very real possibility of a franchise award to a low bidder that would result in damage to the local economy. Recognizing the practicality of minimum requirements in regard to price, the *Berea College* court noted that "to deny cities such as Berea the authority to impose minimum bid requirements, would allow public utilities to buy at an inade-

quate price the valuable rights of the citizens. If Sec. 164 is intended to prevent a council from selling franchises at an inadequate price, it cannot logically be interpreted to allow public utilities to buy the same rights at equally inadequate prices." *Id.* at 237.

■ After Owensboro Grain's disqualification, ADM was the sole remaining bidder and in effect wrote its own terms to receive the franchise award. The fact that ADM was the only bidder for this franchise, together with the fact that the bid advertisement presented minimum bid specifications for almost all of the key terms, invalidates the franchise award because there was no opportunity for fair and reasonable competition.

Although we will not address the breadth of the holding in *Berea College* as to minimum bid specifications, we do hold that a bid advertisement may not, as in the case at bar, allow alternative proposals for all of the major lease terms thus allowing bidders to rewrite the bid advertisement. It would be impossible for ORA's Board to make an exact comparison of proposals submitted under its bid advertisement. The bidding procedure in the case at bar runs afoul of the Kentucky Constitution in that there is no fair and reasonable method to determine the highest bidder. In order to protect the general public from possible arbitrary awards that may be harmful to the welfare of the community, bidding advertisements must maintain some stability in lease terms. Ky. Const. Sec. 2.

Therefore, the Court of Appeals' decision upholding the grain loading franchise to ADM is reversed. In the event ORA decides to proceed with a grant of a franchise to land grain from its property, a proper bidding advertisement must be made which is in compliance with this Opinion.

COMBS, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

WINTERSHEIMER, J., dissents in a separate dissenting opinion in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the alternative bid proposals did not prevent fair competition; there was a fair and reasonable procedure from which the local authority could determine the highest and best bidder and the public was not exposed to any arbitrary awards.

The Court of Appeals and the circuit court correctly upheld the grant of the franchise by the Owensboro Riverport Authority because the Owensboro Grain Company did not meet their burden of establishing fraud, collusion or arbitrariness which is necessary to set aside a franchise awarded pursuant to Kentucky Constitution Section 164.

The objector has the burden of proof regarding allegations that the award of a franchise contained untrue statements and that the awarding authority acted arbitrarily or corruptly. *Baskett v. Davis*, 311 Ky. 13, 223 S.W.2d 168 (1949). As long as the awarding authority acts neither arbitrarily nor corruptly in rejecting bids that fail to meet its minimum bid requirement, the legislative authority given to the municipal corporation and its concurrent discretion will not be questioned by the Courts. *Berea College Utilities v. City of Berea*, Ky. App., 691 S.W.2d 235 (1985). *See Grover v. City of Irvine*, 222 Ky. 366, 300 S.W. 904 (1927).

In the absence of a showing of fraud, collusion, untruth or manifest arbitrariness, the courts shall presume that the municipal authority has not abused its discretion and will not interfere with or otherwise substitute its judgment for the decision of the municipal authority. Such a responsibility lies clearly within the governing authority. *Keith v. Johnson*, 109 Ky. 421, 59 S.W. 487 (1900). For the purposes of this case, the Owensboro Riverport Authority must be considered as a municipal or governing authority. The circuit judge determined "There is no hint of arbitrariness or corruption in this case." The Court of Appeals also concluded there was nothing to support the argument that the bidding process was flawed, illegal or invalid in any respect. Accordingly, the circuit judge correctly granted summary judgment in favor of the Riverport Authority,

and the Court of Appeals properly affirmed that decision.

The language of the bid solicitation indicates that the items covered by the franchise were clearly specified. The public advertisement stated that bids would be received for the leasing of the grain loading facility and the invitation to bid also indicated that the bids were for lease of the grain loading facility. The language was prominently placed at the top of the request form in capital letters. The plain language of these documents indicates that the items covered by the franchise were prominently displayed. The authority did not advertise for one year leases but the request for bids indicated that the one year term was a minimum specification.

K.R.S. 424.140(3) only requires that a description of what is to be bid or sold and a description of any special terms of the sale be enumerated in the specification for bids. Section 164 of the Constitution requires that there be "due advertisement" for the franchise to be granted.

The plain language of the bid solicitation, which established minimum bid terms, shows that there was no discrepancy between the bid specifications and the bid award.

A careful review of the record indicates that Owensboro Grain understood the specifications and that the bid requests were minimum specifications. An exchange of correspondence indicates that the grain company was specifically informed that it could bid an alternative to any of the specifications. The grain company's own bid shows that it understood that the bid solicitation specified minimum terms. They had the opportunity for a term in excess of one year. All bidders were supplied the same information regarding the request for bid. Any confusion or error should not be attributed to the Riverport Authority.

Minimum bid requirements have been held to be constitutionally acceptable in *Berea College Utilities v. City of Berea, supra*. Although the specific facts of *Berea* involve a minimum dollar amount, the holding was not limited to minimum dollar amount specifications. That decision recognized the right of the bidding authority to reject all bids. The language in the opinion "amount or terms" demonstrates that the holding should not be limited to minimum dollar amount bids. Minimum bids are simply a legitimate means by which a governing authority may award a franchise on terms of "fair and reasonable." The effectiveness of the minimum bid procedure is evident here because both bidders offered on several items to agree to all terms which were more favorable to the Riverport Authority than the minimum specifications which they had earlier agreed to accept. *City of Princeton v. Princeton Electric Light & Power Co.*, 166 Ky. 730, 179 S.W. 1074 (1915) used by the majority, is clearly distinguishable from the present case because it does not even consider the legalities of minimum bid specifications. In *Princeton, supra*, the due advertisement requirement of the constitution was violated because the term originally specified was not the term granted in the franchise award. In this case, there is no discrepancy between the subject minimum term specification and the ultimate award. Owensboro Grain could have bid for a term in excess of one year but they did not.

It is to be hoped that the results of the majority decision will not produce a chilling effect on the legitimate methods for bidding public contracts in Kentucky. The governing authority should not be required to revert to a rigid or mechanical bidding procedure in which the public authority would have little or no discretion in awarding franchises. Public authorities generally should have broad discretion in determining which bid is the one most nearly meeting the specifications and statutory provisions should not be so strictly construed as to reduce the governing authority to mere ministerial agents because this would defeat the purpose for which they are designed by allowing unscrupulous contractors to defraud the city. *Cf.* 10 McQuillan, *The Law of Municipal Corporations* § 29.72 at 490–491, 3rd Edition Revised (1990).

The circuit court and the Court of Appeals correctly interpreted Section 164 of the Kentucky Constitution and properly followed the authority of *Berea College Utili-*

*ties, supra,* in upholding the use of minimum specifications for public franchises. There was no hint of wrongdoing in this case. A reviewing court should not presume that the governing authority has abused its discretion and should not substitute its judgment for the decision of the municipal authority in the absence of arbitrariness, corruption, fraud or collusion.

SPAIN, J., joins in this dissent.