## Willis, et al. v. Boyd.

(Decided May 29, 1928.)

### Appeal from McCracken Circuit Court.

1. Navigable Waters.—Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, providing that county may lease portion of bed of Ohio river lying north of bed of stream except accretions, placing no limit on quantity of land which may be leased to any one person, held not to conflict with nor to repeal sections 4703, 4705, limiting number of acres that may be patented to 200, and section 4704, minutely describing procedure to be followed in procuring patent, since lease of bed of stream is in class separate from sale of lands which can be located and described by metes and bounds.

2. Statutes.—Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, providing for leasing of portion of bed of Ohio river lying within county, held not special legislation in conflict with Constitution, sec. 59.

3. Statutes.—Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, providing for lease of portion of Ohio river bed lying within county, describing conditions existing only in bed of Ohio river, held act of general application.

4. Navigable Waters.—Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, providing for leasing of all that portion of bed of Ohio river lying north of bed of stream, except such portions as may be accretions to islands privately owned, held not invalid as providing for lease of privately owned lands, since they were specifically excluded.

5. Navigable Waters.—Lease by county of exclusive right to dig, pump, or take sand from portion of bed of Ohio river within that

county for period of 50 years under authority of Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, held invalid and void, since under Constitution, sec. 164, use could only be let for period not exceeding 20 years to highest bidder.

6. Navigable Waters.—Ky. Stats., sec. 4702, as amended by Acts 1926, c. 184, providing for leasing of portion of Ohio river bed lying within county for county purposes, upon such terms and conditions as may appear beneficial to said county, granted "profits a prendre" (citing Words and Phrases, Second Series, "profit a prendre").

A. M. NICHOLS and WHEELER & HUGHES for appellants.

A. E. BOYD for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

By written contract executed on the 11th day of October, 1923, the county of McCracken, by and through its county judge and county commissioners composing its fiscal court, leased to A. E. Boyd for a term of 50 years the right to extract sand and gravel in all parts of the Ohio river in McCracken county north of the thread of the stream, more particularly described as follows:

"Beginning at the McCracken & Livingston county line in the thread of the stream of said Ohio river; thence across said river with the Ballard & McCracken county line to low-water mark in the Illinois line; thence up said river with the line of low water mark to the McCracken & Livingston county line; thence with Livingston & McCracken county line to the thread of the stream of said river, to the point of beginning."

The lease gave to A. E. Boyd the exclusive right to dig, pump, or take from the bed of the river the sand and gravel lying thereon during the period named. It was further provided that the first payment of the yearly rentals was to be paid "immediately after the said A. E. Boyd establishes by any suit at law or otherwise that said McCracken county has a right to convey title to the sand and gravel in the territory mentioned, . . . and is to be paid thereafter during the month of January for each and every year during the term of this contract or lease," first payment to be made on or before January 1, 1928, upon penalty of forfeiture for nonperformance. By its terms the lease was made assignable, and on his

part Boyd agreed to immediately take such steps as he might deem proper to validate the lease.

Section 4702, c. 127, Kentucky Statutes, provides:

> "Each county in this commonwealth shall have the right to dispose of the unappropriated lands lying therein not otherwise provided for, in the manner hereinafter directed, and hold the proceeds for county purposes, unless the same has been by law otherwise appropriated. *And all that portion of the bed of the Ohio river lying north of the thread of the stream, except such portions as may be accretions to islands privately owned, is hereby declared to be vacant and unappropriated property, and same may be held, leased and used for county purposes, as here inafter provided.*"

The words in plain type constitute the section as it was at the time this contract was made, and the italicized words or second paragraph were added by amendment on March 27, 1926, S. A. c. 184, p. 864. Also, at the time the contract was made section 4703 gave an actual settler on vacant lands a preemption right to the extent of 100 acres, and provided generally for an entry and survey of vacant lands upon paying the county court the sum of not less than $5 per acre on as much as 200 acres of land in one county. By the same amendment to which reference is made above there was added to this section:

> "All that portion of the bed of the Ohio river, lying north of the thread of the stream except such portions as may be accretions to islands privately owned, is to be held and used for county purposes by the respective counties of this commonwealth bordering on said Ohio river; and the county court of each county may use, let or lease said river bed for county purposes, upon such terms and conditions as to it may appear to be beneficial to said county; and any contract of leasing that has been made, or that may hereafter be made, by any such county court of such river bed for any sand and gravel rights, for or on behalf of said county, is hereby declared to convey full right and title to the lessee to the exclusive use of all sand and gravel deposits in said river bed to the extent embraced in such contract of leasing."

Sections 4704-5 of the former chapter provided for a survey and plat to be deposited in the registrar's office and for a patent to issue, together with the minutia to be followed. These sections remain practically unchanged. The amendment, supra, adds two additional sections concerning the patent of surface lands, a matter with which we are not now concerned.

Upon the above amendment taking effect Boyd paid the fiscal court the annual rental fixed in the contract, and subsequently instituted this action against J. G. Willis and J. R. Nelson alleging that without right or authority they were trespassing upon the territory above described and extracting sand and gravel therefrom, and sought to enjoin them from so doing. No answer was filed, and the case was submitted on the petition and exhibits. The circuit court upheld the validity of the contract, found the defendants to be trespassers, and permanently enjoined and restrained them from pumping or taking any sand or gravel from the territory mentioned or further trespassing thereon. Defendants appeal.

It will be observed that the amendment places no limitation upon the quantity of land that may be leased to any one person, while sections 4703 and 4705 limit the number of acres that may be patented to 200, and section 4704 minutely describes the procedure to be followed in procuring a patent for vacant lands, and it is urged that the act either repeals these sections or is invalid as class legislation. We do not think so. There is a distinction between an actual sale of lands which can be located and described by metes and bounds, and that of the bed of a stream in which no physical marks can be made and of which actual possession cannot be maintained as is done in cases of upland; hence in placing this character of real estate in a class to itself and in providing for its disposal by lease instead of sale, and in such quantities and upon such terms as the fiscal courts of the counties deem proper, the act does not conflict with the provisions named nor constitute special legislation, in conflict with section 59 of the Constitution. Also, as the described conditions exist only in the bed of the Ohio river, the act may be said to be of general application even though it specifically refers alone to the bed of that river. It is said, however, that there are many private grants extending to the northern shore line which conflict with the act. It is well known that our state boundary is along the north bank of the Ohio river at low-water mark. Nevertheless,

in construing patents to the Kentucky mainland adjoining that river and calling for the shore line as a boundary, our decisions are uniform in holding that the rights of the riparian owners extend to the thread of the stream. Such grants do not carry title to the bed of the river between the thread of the stream and the northern shore. Of course, if such territory is covered by a specific grant the title to it will remain unaffected by the act, and such lands cannot be leased by the county, and the act itself specifically excludes all privately-owned islands and accretions thereto lying north of the thread of the stream; hence it is not invalid in this respect.

2. A number of objections are raised to the contract, each of which it is claimed render it invalid, but inasmuch as we have reached the conclusion that it is violative of section 164 of the Constitution, and this objection is one of general interest, we do not deem it necessary to discuss any of the others. Assuming the act to be valid, it will be observed that section 4702 does not give the counties unlimited disposition of vacant lands. But such right is to be exercised "in the manner hereinafter directed," and while the mainland may be patented and sold in "the manner provided" therefor and made applicable thereto, the power of the disposition of the river bed was restricted to the "letting or leasing for county purposes upon such terms and conditions as to it may appear beneficial to said county." Clearly the rights thus granted were profits a prendre. See 3 Words and Phrases, Second Series, p. 1252; 14 Cyc. 1142; 19 C. J. 870; Huntington v. Asher, 96 N. Y. 604, 48 Am. Rep. 652; Pierce v. Keator, 70 N. Y. 419, 26 Am. Rep. 612; Baker v. Kenney, 145 Iowa, 638, 124 N. W. 901, 139 Am. St. Rep. 456. As the use alone was granted, such use could be let or leased by the county for a suitable period but not for exceeding twenty years. Const. sec. 164. Nor could a valid contract therefor be made for a term of years except at public bidding after due advertisement. See same section. It will be observed that the act does not provide any of the terms of the lease. The counties in their discretion may segregate the territory to be leased and fix the quantity of each leasehold, the period it shall run, and the manner and time of payment of rentals. But this is subject to constitutional limitations. No doubt under the present statute persons now engaged in the extraction of sand and gravel from described territory without the consent of the county are trespassers

.and may be restrained from so doing in a proper proceeding. On the other hand, it is manifest that a lessee thereof from the county obtains a *right* or *privilege* that is not enjoyed by citizens in general, and that such privilege comes within both the language and spirit of the constitutional provisions, supra. It follows that the contract in question is void as being for a longer period than 20 years and also for the reason that it was granted without competitive bidding. Having no valid rights, such parties are entitled to no relief. Having reached this conclusion, it is unnecessary to determine whether the contract was void for any other reason.

Wherefore the judgment is reversed, with instructions to dismiss the petition.