## Inland Waterways Company v. City of Louisville et al.

(Decided January 15, 1929.)

BLAKEY, DAVIS & LEWIS for appellant.

WILLIAM G. DEERING for appellee City of Louisville.

MATT O'DOHERTY for appellee Nugent Sand Company.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This appeal involves the validity of a lease given by the city of Louisville upon real property held by it, but not presently utilized, for wharf purposes. The Inland Waterways Company complains of a judgment declaring

the lease invalid. The leased lands front upon the Ohio river and were acquired by deeds to the city for ultimate use for landings and wharves. They are not now needed by the city for that purpose, and it is not prepared to use them immediately for a public wharf or landing. Until such time as the city may so require the lands, it has leased them to promote, if possible, the development of a useful and valuable river terminal business, realizing meanwhile some return upon the investment.

Inasmuch as some of the terms of the lease are thought to give character to the act of the city different from that of temporarily leasing its idle lands, a summary of the provisions of the contract is appropriate. It leases to the Inland Waterways Company for a fixed term, and upon express conditions, two separate tracts of land, fully described, both of which front upon the Ohio river; grants a right to extend railroad tracks from one of the parcels of land to the west line of Thirty-third street; reserves the right to use any portion of the leased premises for storage or other city purposes without obstructing the lessee in its use of the same premises; fixes an annual rental and provides for additional rental of one-half the net profits realized by the company after allowing operating expenses and a return of 8 per cent. per annum on its investment; authorized the company to make subleases, within specified limitations, but the lease is not assignable or transferable without the consent of the city; specifies conditions under which other similar property, then under lease to others, might be brought within the operation of this lease; limits the duration of the lease to periods within the lawful power of the city to grant; and provides for a recapture when and as the city may need the land or any portion of it for municipal wharf purposes.

The purpose defined in the contract for which the land is to be used by the lessee is to develop both parcels of land as river terminals. The company covenants to construct wharves, ways, tracks, and structures, and to install reasonably necessary equipment to transfer freight from river craft to land conveyance and vice versa, and to make deliveries from land to water and from water to land. The company further covenants to render public river terminal service for reasonable compensation, without discrimination as to the charges or character of service, but the business is to be free of any

control by the board of public works, except such inquis-itorial powers as the contract allowed to assure the city of fair treatment in matters of expenditure affecting the net profits in which the city was ultimately concerned. There are many other provisions, but they are not in-voked as affecting the character of the contract, being mere details worked out to provide for various contin-gencies, and clearly within the power of the city and the purview of the contract, if a lease of this kind may be made at all.

A brief history of legislation and litigation respect-ing the subject-matter of the contract will clarify consid-eration of the case. By an act of the Assembly approved June 3, 1865 (Loc. & Priv. Laws 1865, c. 1691), it was provided:

> "That the General Council of the City of Louis-ville shall have, and are invested with the power and authority, from time to time, by ordinance, to pur-chase or lease and improve, for the use, benefit, and in the name of said city, any additional or other ground within said city, and fronting and near to the Ohio river, as shall be considered necessary for wharves, or places for landing of water crafts of any description, or lumber, or other articles brought to the city by water."

Pursuant to the power thus delegated, considerable land along the river front was acquired by the city. The particular lands included in the present lease were ac-quired by several deeds dated February 1, 1865, August 3, 1868, August 5, 1868, May 2, 1877, and November 22, 1883. Other lands of the same character were taken by condemnation proceedings. In 1879 an action was brought by Curran and others to recover some of the land con-demned in 1867 for wharf purposes on the ground that it was not being devoted to the public use for which it had been condemned, and on the specific allegation that the land was not being used for wharf purposes and had re-verted to the former owner, as though abandoned. This court affirmed a judgment denying the relief sought (Curran v. City of Louisville, 83 Ky. 628) and upheld the right of the city to keep the lands until its financial sit-uation and the business conditions justified it in devoting the property to the use for which it was acquired. A second similar attempt made in 1912 by the heirs of Cur-

ran to recover the same property for the same reasons met a like fate. Curran v. City of Louisville, 148 Ky. 592, 144 S. W. 1057. The court said that the city's delay, however long extended, while keeping itself in position ultimately to use the land for the purposes for which it was acquired, did not entitle the former owner to recover it.

The act of July 1, 1893 (Laws 1893, c. 244), for the government of cities of the first class, provided by section 98 that the wharves and landings should be under the control of the board of sinking fund commissioners, but contained no provision respecting the extent of the authority of the city over the property in the meantime. On February 24, 1894, the act for the government of cities of the first class was amended and section 98 was enlarged so as to authorize the sinking fund commissioners to fix and receive reasonable charges for the use of the wharves and landings and required them to be kept in order and also provided for a wharfmaster and defined his duties. That act also contained the following provision:

"The said commissioners shall have power to lease and receive the rentals from any portion of the wharf property not needed for wharf purposes for the time being, but all leases shall provide for their cancellation whenever the property leased is, in the judgment of the commissioners, required for wharf purposes." Chapter 13, p. 18, Acts of 1894.

This court had held in Bateman v. City of Covington, 90 Ky. 390, 14 S. W. 361, 12 Ky. Law Rep. 384, that the use and control of wharves belonging to the city could not be let to private individuals to the exclusion of the public, without express legislative authority, and adjudged a lease of a wharf by the city to a private person void for lack of such authority. Cf. Roberts v. City of Louisville, 92 Ky. 95, 17 S. W. 216, 13 Ky. Law Rep. 406, 13 L. R. A. 844. It is obvious that the charter was amended to conform to the ruling of this court. In any event, express legislative authority was then given to the city to lease its wharves and landings. Later, by the act of February 28, 1902, the wharves and landings of cities of the first class were placed under the control of the board of public works and authority expressly conferred upon that body to lease and receive the rentals on the

property not needed for the time being for wharf purposes. That act is still in force and constitutes the present section 2860 of the Kentucky Statutes.

Such is the background and legal history of the lease and of this controversy concerning its validity. The lease is assailed upon the ground that it constitutes the granting by the city of a franchise or the conferring of a privilege without advertisement and public sale, which is interdicted by section 164 of the Constitution of the commonwealth. The case requires a consideration of the attributes of a franchise or privilege, as related to wharves and landings, the nature of the city's ownership of the lands, with riparian rights, and the character and operation of the particular lease.

A franchise or privilege of the type contemplated by section 164 of the Constitution is generally understood to designate and denote a right or preference conferred by law which may be granted only by the sovereign, and not by individuals generally. It involves some special privilege not belonging to the public by common right. 12 R. C. L. sec. 1, pp. 173, 174. It was regarded in England as a royal privilege or branch of the King's prerogative, subsisting in the hands of a subject. Bouvier's Law Dictionary (Rawle's Third Revision) vol. 3, p. 1299. In order to constitute a franchise, the right possessed must be such as cannot be exercised without the express permission of the sovereign power, a privilege or immunity of a public nature which nannot be legally exercised without a legislative grant (People's Transit Co. v. Louisville Ry. Co., 220 Ky. 728, 295 S. W. 1055; City of Princeton v. Princeton Elec. Lt. & Power Co., 166 Ky. 730, 179 S. W. 1074; Irvine Toll Bridge Co. v. Estill County, 210 Ky. 170, 275 S. W. 634), but clearly a lease of land for temporary use does not partake of the properties of a franchise (26 C. J. sec. 23, p. 1018; People v. State Tax Commission, 195 N. Y. 618, 89 N. E. 1109, affirming 126 App. Div. 610, 110 N. Y. S. 577; City of N. Y. v. Interborough Transit Co., 53 Misc. Rep. 126, 104 N. Y. S. 157).

The chancellor, in a well-reasoned opinion, first held the lease valid. He changed his ruling, however, after the opinion of this court in the case of Willis v. Boyd, 224 Ky. 732, 7 S. W. (2d) 216, was announced, being of the opinion that the decision in that case controlled the present one. That case related to the taking of sand and

other substances from the Ohio river within its banks, and granted a right which was in the nature of a profit a prendre. It concerned a privilege not common to the public which could be granted only by the sovereign. The Ohio river is a public highway of common right (Monongahela River Consolidated Coal & Coke Co. v. Lancaster's Adm'r, 169 Ky. 24, 183 S. W. 258; Railroad Co. v. Schurmeier, 7 Wall. 272, 19 Law Ed. 74), and a right of way upon, over, or across a street (City of Covington v. L. & N. R. Co., 158 Ky. 136, 164 S. W. 329), or a right to exercise a privilege in the public highway, which, except for the grant, would be a trespass, is generally considered to be a franchise (12 R. C. L. sec. 1, p. 175). It was not a mere right and power belonging alike to all corporations and individuals, but was one which inhered in and necessarily emanated from the sovereignty alone. Cf. People of New York v. State Bd. of Tax Comm., 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884.

These essential differences distinguish the Willis case from the present one, which involves a mere temporary use of lands for a proper purpose, to endure at the will of the city. It possesses none of the characteristic features of a franchise. The recapture provision is wholly incompatible with the idea of a fixed right for a definite term. But it is said that the provisions of the contract which require the appellant to construct wharves, ways, tracks, and structures and to install equipment necessary to transfer freight, described as a public river terminal, where service is to be rendered for a reasonable compensation, without discrimination, and free of the control of the board of works, except in so far as its operating expenses are concerned, essentially imposed the duty of operating a wharf, and that such a wharf could be conducted only under a franchise. Wharves are not necessarily public. They may be private property, and may be operated by any riparian owner without a franchise. The owner of a private wharf has a right to its exclusive use and emoluments and to permit its enjoyment by such individuals as he may see proper. Whether a wharf or landing is public or private depends on a number of factors, separately or in combination, and the lease in question does not, by any of the tests, provide for a public wharf requiring a franchise as a prerequisite to its lawful operation. It is recognized by the cases that while a wharf built on land belonging to the public may

have some of the elements of a public wharf, yet even when it is upon land leased from a public corporation, if it is operated as a private wharf, it takes the character of a private wharf. It is the nature of the business, not the title to the land, that fixes its status. It is the service that is rendered pursuant to an obligation, not the facilities employed, that determines the proper solution of the problem. People's Transit Co. v. Louisville Ry. Co., 220 Ky. 728, 295 S. W. 1055. A private owner of riparian lands may operate and maintain a wharf as a private, unregulated business. 28 R. C. L. p. 17; Exterkamp v. Covington Harbor Co., 104 Ky. 796, 47 S. W. 1086; L. & N. R. R. Co. v. West Coast Co., 198 U. S. 483, 25 S. Ct. 745. 49 L. Ed. 1135; Prior v. Swartz, 62 Conn. 132, 25 A. 398, 18 L. R. A. 668, with note, 36 Am. St. Rep. 333; Weem's Steamboat Co. v. People's Steamboat Co., 214 U. S. 345, 29 S. Ct. 661, 55 L. Ed. 1024, 16 Ann. Cas. 1222; Ill. Cent. R. Co. v. Illinois, 146 U. S. 445, 13 S. Ct. 110, 36 L. Ed. 1018; Transportation Co. v. Parkersburg, 107 U. S. 691; 2 S. Ct. 732, 27 L. Ed. 584; Yates v. Milwaukee, 10 Wall. (77 U. S.) 497, 19 L. Ed. 984; Parker v. West Coast Packing Co., 17 Or. 510, 21 P. 822, 5 L. R. A. 61. See, also, Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722; Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L. R. A. 62; Dutton v. Strong, 1 Black (66 U. S.) 23, 17 L. Ed. 29.

The proposed river terminal is not to be operated in competition with the municipal wharf or serve any purpose subserved by it. The object is to develop a type of desirable business not now existing, and which may be developed properly by a private person or corporation. Until the city takes it over and begins its operations as a public wharf, there is no reason apparent why the objects contemplated by the contract may not be accomplished. It is expected that boats and barges will be moored at the landings, and that appellant will provide cranes and hoisting devices for transferring the contents of such vessels to railroad cars on the shore, or to storage bins and warehouses; and that vessels may be likewise loaded for shipment. Such business is not now performed at the public wharf, and it is not known that it will be of sufficient volume or value to justify the city in making the expenditures necessary to embark in that branch of business. This consideration has induced the city to lease the land in order that such business may, if possible, be

created and developed to profitable proportions. It must be remembered that the city reserves the right, as it is directed to do by statute, to terminate the lease at any time when the property may be required for municipal wharf purposes. In view of this situation and the plain purpose to be served, we see no room for the argument that the necessary operations under the contract involve the essential exercise of a franchise.

It may not be deduced from the mere making of the present contract that the land is now needed for landing or wharf purposes. The presumption that the public officers have but performed their duty is fortified by the admitted fact that the public river terminal business is an expensive experiment. No particular or pressing present need for such service is shown, and instead of making the experiment in that matter, as it might do, the city has deemed it advisable to have the experiment made by others on reasonable terms, without risk to the city. It cannot be doubted that such an arrangement is within the discretion of the city officials charged with the responsibility for the property.

A municipal corporation may be the owner of land and may control, use, lease, and dispose of it as other proprietors may do. Ky. Stats., sec. 2742; Carrollton Furniture Mfg. Co. v. City of Carrollton, 104 Ky. 525, 47 S. W. 439, 885; Board of Council of the City of Frankfort v. Pattie (Ky.) 12 S. W. (2d) ——, decided December 7, 1928. We are not called upon to determine or decide whether or not the particular land here involved is invested with all the rights of land in the hands of an ordinary riparian owner. The only right asserted by the city is to lease the land temporarily as expressly authorized by the legislative power of the state. We do not understand that such right is, or could be, questioned. Com. v. City of Louisville, 133 Ky. 845, 119 S. W. 161.

The contention is that the contract in substance creates a franchise and confers a privilege upon the appellant without conforming to the mandate of section 164 of the state Constitution. But we have seen that no such franchise was created or conferred. There is a subordinate contention that the board of public works did not have the power to grant the rights mentioned in the contract, and for that reason could not make a lease of the land for the exercise of privileges which the board

itself could not bestow. That contention confuses the character of the lessee and the character of the lease. Conceding that the city may temporarily lease its lands held for ultimate use as wharves and landings, it is still insisted that it may not make a lease to a company that proposes to engage in a river terminal business that partakes of a public nature, and which may be or become subject to the regulatory power of the government. The lease does not confer upon the lessee the right, or power, or authority to engage in the business mentioned in the lease, or in any business. It presupposes that the lessee possesses such powers, or will obtain them in the manner authorized by law. The lease merely conveys a limited estate in the land to be enjoyed until the city needs it for the purposes for which it is held. The powers of the lessee are defined by its charter and were necessarily conferred by the state when it was incorporated. If the lessee must obtain a franchise to perform any term of the lease, it can only be obtained in the manner prescribed by law. All that the city grants by the lease is the temporary use of its land. It constitutes a simple renting for a fixed consideration. The city, as lessor, has prescribed certain conditions that must be performed by the lessee in order to enjoy the use of the city's land, but the city, by the lease, grants no powers or rights to the lessee to perform those conditions. It must obtain such rights and powers as it may need in advance of its exercise of its privileges as lessee. Suppose the city should lease a right of way over its private lands to a street railway company, and provide as a condition to a continuance of the lease that a track should be constructed and cars operated thereon. It is perfectly clear that such a lease would not be an attempt to grant to the lessee a franchise to operate a street railway. In order to enjoy and keep its lease it might be necessary for it to have a franchise, but the franchise would have to be obtained according to law, and that circumstance would not affect the present validity of the lease. A landowner may lease his lands for any lawful purpose and may prescribe such conditions as he is able to exact. All he grants is the use of his land on the terms and conditions expressed. A riparian owner has the same right to lease his lands for any lawful purpose to which they may be adapted as is possessed by a proprietor remote from the river. New Orleans v. Louisiana Const. Co., 140 U. S. 654, 11 S. Ct.

968, 35 L. Ed. 556; Weem's Steamboat Co. v. People's Steamboat Co., 214 U. S. 345, 29 S. Ct. 661, 53 L. Ed. 1024, 16 Ann. Cas. 1222. The location of the land affects the uses to which it may be put, but it does not work a change in the rights of its owner as such. The lease of lands to a public utility company for its use, on conditions conforming to the character of its service, does not vest the lessee with the right to operate as a public utility or empower it to exercise such functions. It must obtain its right in those respects from other sources and by other means. It is not claimed that the appellant is not empowered to lease land, and the appellee, of course, has the power by express statute. The right to lay railroad tracks is confined to the land, and stops at the street. But aside from all these considerations, it is apparent from what has been said that the powers to be performed by the lessee under the lease are such as may be possessed by any riparian owner, and no franchise is requisite for their exercise.

Neither is the lease invalid as an attempt by the board of public works to delegate its own delegated duties to a private corporation. It is well settled that delegated duties must be performed by the agencies to which they are delegated and the responsibility may not be escaped by shifting those duties to others. The reason is that a trust confided to a legally constituted board or body must be performed as directed, and any diversion of the purpose or deviation from the objects of a trust will not be tolerated. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828; Jameison v. Paducah, 195 Ky. 71, 241 S. W. 327; Floyd County v. Bridge Co., 143 Ky. 696, 137 S. W. 237; Board of Park Comm. v. Speed, 215 Ky. 319, 285 S. W. 212.

The law imposes upon the board of public works in cities of the first class fixed powers and duties respecting the wharves and landings, including the right to fix reasonable charges for the use of the same. So far as the duty relates to the lands not being presently used by the city for its ultimate purposes, the fixing of the rental in a temporary lease is a performance of the statutory duty. Com. v. City of Louisville, 133 Ky. 845, 119 S. W. 161. In so far as it relates to the public wharf operated by the city, the duties of the board are not affected by this lease. The statute clearly contemplates the operation of a public wharf where freight and passengers are handled and

accommodated, and at the same time authorizes a renting of lands not needed for the time being for such purpose. The powers and duties of the board relate to both objects, and authority is given to lease the wharves and landings not needed for the time being, and to regulate charges and conditions at the public wharf.

It is established in this state that a city may acquire lands in contemplation of reasonable necessity in the future and employ the powers of condemnation to that end. Baxter v. Louisville, 224 Ky. 604, 6 S. W. (2d) 1074; L. & N. R. Co. v. City of Louisville, 190 Ky. 214, 227 S. W. 160. And it is equally well settled that the city may lease the property temporarily until such time as it may be devoted to the use for which it was acquired. The city may plan and provide for the future within the limits of a reasonable discretion.

It is our conclusion that the lease in question is valid and conferred no franchise or privilege of the nature required to be sold, under section 164 of the Constitution.

The judgment is reversed and cause remanded for proceedings consistent herewith.