**BFI WASTE SYSTEMS OF NORTH AMERICA, INC., Appellant,**

v.

**HUNTINGTON WOODS NEIGHBORHOOD ASSOCIATION, INC., Appellee.**

**Franklin County Fiscal Court, Appellant,**

v.

**BFI Waste Systems of North America; and Huntington Woods Neighborhood Association, Inc., Appellees.**

Nos. 2002–CA–000661–MR, 2002–CA–000805–MR.

Court of Appeals of Kentucky.

Nov. 21, 2003.

Discretionary Review Denied by Supreme Court June 9, 2004.

Dennis J. Conniff, Amy D. Cubbage, David J. Conniff, Louisville, KY, for appellant, BFI Waste Systems.

Richard M. Sullivan, Edward F. Busch, Louisville, KY, for appellant, Franklin County Fiscal Court.

Phillip J. Shepherd, David M. Vance, Frankfort, KY, for appellee.

Before BAKER, BARBER and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

BFI Waste Systems of North America, Inc. and the Franklin County Fiscal Court have appealed from an order entered by the Franklin Circuit Court on October 23, 2001, which granted summary judgment[1] in favor of the Huntington Woods Neighborhood Association, Inc. Having concluded that Huntington is entitled to a judgment as matter of law, we affirm.

In 1991 the Kentucky General Assembly enacted Senate Bill 2[2] in an effort to ameliorate many of the environmental problems associated with solid waste disposal. In particular, Senate Bill 2 required county governments to engage in comprehensive solid waste management planning. Senate Bill 2 further required county governments to prepare solid waste management plans for their respective solid waste management areas.[3] In an effort to comply with the provisions of Senate Bill 2, the Franklin County Fiscal Court

---

1. Kentucky Rules of Civil Procedure (CR) 56.03.

2. 1991 Ky.Acts (First Ex.Sess) ch. 12.

3. *Id.* ch. 12, § 6.

entered into a contract with BFI on June 5, 1992, which, among other things, reserved a certain amount of space in BFI's privately owned landfill for municipal solid waste generated in the unincorporated area of Franklin County.[4] The contract entered into between BFI and the Fiscal Court was titled "Host Community Agreement," and it was set to expire in 2002.[5] On November 4, 1992, the Fiscal Court awarded BFI a ten-year franchise for the collection and disposal of municipal solid waste generated in the unincorporated area of Franklin County.[6] The franchise agreement entered into between BFI and the Fiscal Court was publicly advertised and bid in accordance with Section 164 of the Kentucky Constitution.[7]

In recognition of the fact that the original Host Community Agreement was set to expire in 2002, BFI and the Fiscal Court entered into a second Host Community Agreement on March 10, 2000, which, among other things, sought to expand BFI's landfill in order to provide for Franklin County's future disposal needs. The 2000 Host Community Agreement contains the following provisions, which are particularly relevant for purposes of this appeal:

III. *Term.*

This agreement shall continue for twenty (20) years after the Effective Date, unless terminated by agreement of the parties or pursuant to the terms of this Agreement.

. . .

VI. *Fees.*

A. During the term of this Agreement, BFI shall pay a fee to the Fiscal Court in the amount of five and three-quarters percent (5.75%) of the gross receipts for out-of-area waste accepted for disposal at the Facility. For purposes of this Agreement, "out-of-area" waste shall mean waste which is generated outside the Solid Waste Management Area.

. . .

D. The parties intend that the payments to be made and services to be provided by BFI under this Agreement shall be in lieu of all license fees, taxes and other impositions of the type provided for in KRS 68.178. Therefore, in determining the amount of fees payable under this Agreement, BFI shall be entitled to deduct from the amounts otherwise payable to Fiscal Court, the amount of those types of license fees, taxes and impositions (other than taxes and fees imposed generally without reference to the status of the taxpayer or fee payer as the owner or operator of a solid waste management facility, waste site or facility) payable by BFI to Fiscal Court, Franklin County or multi-county political district or subdivision of which Franklin County is a part.

. . .

---

4. BFI's landfill is located off Highway 151 in Frankfort, Kentucky.

5. More specifically, the "Host Community Agreement" contained the following provision:

> This Agreement shall become effective on the date the Solid Waste Management Plan (amended to be consistent with this Agreement) is approved by the Cabinet. [*See* Kentucky Revised Statutes (KRS) 224.43–345.] This Agreement shall continue for ten (10) years thereafter, unless terminated by

agreement of the parties or pursuant to the terms of this Agreement.

6. It is the appellants' contention that the franchise agreement entered into on November 4, 1992, represented a separate contract, apart from the Host Community Agreement entered into on June 5, 1992.

7. The Host Community Agreement was not publicly advertised, nor was it competitively bid.

XI.  *Indemnification.*

A.  BFI shall indemnify and hold Fiscal Court harmless from any and all claims, damages, suits or causes of action, including reasonable attorney's fees resulting from the design, construction or operation of the Facility.

B.  BFI shall indemnify and hold Fiscal Court harmless from any and all claims, damages, suits or causes of action, including reasonable attorney's fees (not to exceed fifty thousand dollars ($50,-000.00) in fees and court costs) resulting from the rezoning of the Facility or the Expansion, or the issuance of a conditional use permit or a variance for the Facility or the Expansion, unless the claim, suit or action is brought by BFI.

. . .

XIII.  *Free Disposal of Certain Franklin County Waste.*

A.  Each month during the term of this Agreement, BFI shall provide without charge up to forty (40) tons of disposal capacity at the Facility for waste from Franklin County open dump cleanups, roadway litter removal, or other county operations which is delivered to the Facility by Franklin County[.]

B.  BFI shall provide disposal of household solid waste at a reduced rate to residents of Franklin County, to be billed to the Fiscal Court.... This household solid waste shall be accepted for disposal at a reduced rate of ten dollars ($10.00) per vehicle, which shall be billed to the Fiscal Court on a monthly basis.

. . .

XV.  *General Provisions.*

. . .

B.  The terms and conditions of this Agreement are contingent upon BFI's receiving permits from the Cabinet that enable BFI to construct and operate the Expansion and as necessary to comply with this Agreement; the issuance of a determination by the Fiscal Court pursuant to KRS 224.40–315 that the Expansion is consistent with the Plan; and the approval of zoning for the Expansion in a manner that does not materially alter the proposed Expansion, as described in Attachment A (including, if applicable, the approval of any necessary zone change or the issuance of a conditional use permit).  BFI shall have the right to determine, in its good faith sole discretion, whether the approval of any zone change or conditional use permit issued for the Facility materially alters the proposed Expansion.

The 2000 Host Community Agreement was also not publicly advertised, nor was it competitively bid.

On June 1, 2000, Huntington[8] filed a petition for declaratory and injunctive relief in the Franklin Circuit Court challenging the validity of the 2000 Host Community Agreement entered into between BFI and the Fiscal Court.  More specifically, Huntington claimed the 2000 Host Community Agreement created a franchise granted in violation of the competitive bidding requirements of Section 164 of the Kentucky Constitution.  Huntington further alleged that the Agreement violated the due process rights of its members.  On June 21, 2000, the Fiscal Court filed an answer averring, among other defenses, that the 2000 Host Community Agreement did not grant BFI a franchise or privilege within the meaning of Section 164 of the Kentucky Constitution.  On December 21,

8.  The Huntington Woods Neighborhood Association, Inc. is comprised of a group of citizens and homeowners currently residing in a Franklin County subdivision located directly across from BFI's Franklin County landfill.

2000, the Fiscal Court passed Resolution 17–2000, which included an amendment to the Franklin County Solid Waste Management Plan authorizing the expansion of BFI's landfill. On February 16, 2001, BFI filed an answer generally denying the allegations raised by Huntington in its petition for declaratory and injunctive relief. In March 2001 the Fiscal Court issued a "local determination" pursuant to KRS 224.40–315(1), stating that BFI's proposed expansion of the landfill was consistent with the Franklin County Solid Waste Management Plan. On April 6, 2001, Huntington filed a motion for partial summary judgment. In addition to the allegations raised in its petition for injunctive and declaratory relief, Huntington claimed the 2000 Host Community Agreement was in violation of Sections 60, 171, 174 and 181 of the Kentucky Constitution, which collectively prohibit special legislation and require uniformity and equality in taxation,[9] and that it was not enacted as an ordinance as required by law.

On October 23, 2001, the trial court entered an order granting Huntington's motion for summary judgment.[10] The trial court concluded that the 2000 Host Community Agreement created a franchise affording special privileges or treatment to BFI in violation of the competitive bidding requirements of Section 164 of the Kentucky Constitution. The trial court relied upon *Eastern Kentucky Resources v. Arnett*,[11] in primary support of its ruling. The court did not address Huntington's remaining arguments. On November 2, 2001, the appellants filed motions to alter, amend, or vacate [12] the trial court's order, which were summarily denied.[13] This appeal followed.[14]

BFI and the Franklin County Fiscal Court claim the trial court erred by granting summary judgment in favor of Huntington. More specifically, the appellants claim that: (1) the "Host Community Agreement" dated March 10, 2000, does not create a franchise affording special privileges or treatment to BFI in violation of the competitive bidding requirements of Section 164 of the Kentucky Constitution; (2) the Agreement does not violate the due process rights of Huntington's members; (3) the Fiscal Court was not required to enact the 2000 Host Agreement as an ordinance; and (4) the Agreement does not violate Sections 59, 60, 171, and 181 of the Kentucky Constitution.

---

**9.** Huntington argued that the 2000 Host Community Agreement violated Sections 60, 171, 174 and 181 of the Kentucky Constitution by precluding the Fiscal Court from imposing the statutory maximum tax (6.25%) on any out-of-area waste accepted for disposal at BFI's Franklin County landfill. *See* KRS 68.178(2)(b).

**10.** Although Huntington's motion was originally brought as a motion for partial summary judgment, the trial court entered an order tendered by Huntington on May 29, 2001, stipulating that Huntington's motion for partial summary judgment was, in effect, a motion for a final judgment on the merits of the action.

**11.** Ky., 934 S.W.2d 270 (1996).

**12.** CR 59.05.

**13.** In actuality, BFI filed a motion to alter or amend, whereas the Fiscal Court filed a motion to alter, amend, or vacate the order entered by the trial court on October 23, 2001. Huntington also filed a motion to alter or amend judgment pursuant to CR 60.02, asking the court to declare the resolution (Resolution 17–2000) passed by the Fiscal Court on December 21, 2000, and the "local determination" issued by the Fiscal Court in March of 2001, to be "null and void." Huntington's motion was also summarily denied by the trial court.

**14.** The Fiscal Court and BFI both filed appellate briefs in the case *sub judice*.

The standard of review governing an appeal from a summary judgment in this Commonwealth is well-settled. We must determine whether the trial court erred in concluding that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law.[15] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[16] In *Paintsville Hospital Co. v. Rose*,[17] the Supreme Court of Kentucky held that for summary judgment to be proper the movant must show that the adverse party cannot prevail under any circumstances. The Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor."[18] There is no requirement that the appellate court defer to the trial court since factual findings are not at issue.[19] Whether the 2000 Host Community Agreement entered into between BFI and the Fiscal Court created a franchise in violation of Section 164 of the Kentucky Constitution is purely a question of law, subject to this Court's independent review.

■ The appellants insist that the 2000 Host Community Agreement "in no way grants BFI any rights or privileges not available to the public at large." The appellants further claim that the trial court misconstrued both the terms of the 2000 Host Community Agreement and Kentucky law as it pertains to franchises. We respectfully disagree. Section 164 of the Kentucky Constitution reads in relevant part as follows:

> No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor[e] publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids.

In *E.M. Bailey Distributing Co., Inc. v. Conagra, Inc.*,[20] the Supreme Court stated:

> The purpose for Section 164 of the Kentucky Constitution is to prevent governmental agencies of any kind from giving away, or disposing of at inadequate prices, the rights and privileges which belong to its citizens and to compel the disposition of public property to be accomplished publicly and for the highest and best value.[21]

It is undisputed that the 2000 Host Community Agreement was not publicly advertised or competitively bid. Thus, the question presented on appeal is whether the 2000 Host Community Agreement created a franchise agreement between BFI and the Fiscal Court.

---

15. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

16. CR 56.03.

17. Ky., 683 S.W.2d 255, 256 (1985).

18. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

19. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992).

20. Ky., 676 S.W.2d 770, 773 (1984).

21. *See also Stites v. Norton*, 125 Ky. 672, 677, 101 S.W. 1189, 1190 (1907).

The Supreme Court of Kentucky was faced with a similar issue in *Arnett, supra.* The franchise agreement at issue in *Arnett* granted Eastern Kentucky Resources (EK Resources) the right to operate a landfill in Magoffin County, Kentucky, and the right to collect the garbage of the county free of charge. The agreement further provided that EK Resources was to pay Magoffin County a royalty fee for each ton of garbage accepted from outside the county and that any other landfill choosing to locate in Magoffin County would have to pay the same royalty fees as EK Resources.[22]

On appeal, the Supreme Court concluded that the agreement entered into between EK Resources and the Magoffin County Fiscal Court "constituted a special privilege which Magoffin County Fiscal Court gave to EK Resources without advertising or bidding as required by Section 164."[23] The Supreme Court noted as follows:

[A] franchise is [generally defined as] a right or privilege granted by a sovereign power to a party to do some act which such party could not do without a grant from the government.[24]

. . .

Only a local government can contract to allow all its residential garbage to be collected free. Only a local government can agree that no other landfill company will operate within its geographic area without paying the same royalties as the current landfill. Clearly, these are privileges granted to EK Resources by the contract.[25]

■ The appellants, however, insist that the contract at issue in *Arnett* is "distinctly different from the 2000 Host Community Agreement." The appellants claim that the contract at issue in *Arnett* expressly granted EK Resources all of the county approvals necessary to construct and operate a landfill in Magoffin County, whereas the 2000 Host Community Agreement grants no such right. This distinction is without merit. While we agree with the appellants that the 2000 Host Community Agreement does not expressly grant BFI the exclusive right to collect or dispose of solid waste generated in the unincorporated areas of Franklin County, it does provide significant financial rewards to the Fiscal Court that are contingent upon local approval of BFI's proposed expansion.[26] As for the appellants' argument that the 2000 Host Community Agreement does not grant BFI the "exclusive" right to collect or dispose of solid waste generated in the unincorporated areas of Franklin County, the following annotation contained in 36 Am.Jur.2d, *Franchises*, § 29 (1968), adequately summarizes our position on the issue:

public property, or at least the property over which the granting authority has control" [citations omitted].

---

**22.** *Arnett*, 934 S.W.2d at 275.

**23.** *Id.*

**24.** *Id.* (citing *E.M. Bailey*, 676 S.W.2d at 771; *Mt. Vernon Tel. Co. v. City of Mt. Vernon*, 313 Ky. 93, 230 S.W.2d 451 (1950); and *Inland Waterways Co. v. City of Louisville*, 227 Ky. 376, 13 S.W.2d 283 (1929)). *See also Young v. City of Morehead*, 314 Ky. 4, 7, 233 S.W.2d 978, 980 (1950), "[t]he term "franchise" is difficult to define due to the broad sense in which it is used both in legal and popular parlance. But it seems to us that the word as used in § 164 is a grant of a right to use

**25.** *Arnett*, 934 S.W.2d at 275.

**26.** For example, under Section XIII of the agreement, BFI is required to provide free disposal for certain types of waste generated in Franklin County. Moreover, under Section VI of the Agreement, BFI is required to pay a fee in the amount of 5.75% of the gross receipts for out-of-area waste accepted for disposal at BFI's Franklin County landfill.

Monopoly is not an essential feature of a franchise, and the strictly legal signification of the term "franchise" is not always confined to exclusive rights. The mere granting of a franchise does not amount to an implied contract on the part of the grantor that it will not grant a rival franchise to a competing corporation or enter into competition itself in reference to the subject of the franchise. A local franchise to operate a public utility, while having elements of property, confers no contractual or property right to be free of competition either from individuals, other public utility corporations, or the state or municipality granting the franchise, in the absence of a contract precluding the grantor from initiating or permitting such competition [footnotes omitted].

Simply put, the 2000 Host Community Agreement, in effect, granted BFI the right or privilege to expand its Franklin County landfill.[27] This right or privilege is not one that is enjoyed by the citizens in general.[28]

■ Appellants further argue that a franchise cannot be granted "for the sale of a commercial product that is not a product of a government, but is a business which is open to all." This argument is entirely without merit. "The management of solid waste, including its disposal, is vested exclusively in county fiscal courts."[29] KRS 67.083(3), which provides the statutory framework under which the county fiscal courts operate in this regard, states in relevant part as follows:

The fiscal court shall have the power to carry out governmental functions necessary for the operation of the county. Except as otherwise provided by statute or the Kentucky Constitution, the fiscal court of any county may enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds, and employ personnel in performance of the following public functions:

. . .

(o) Exclusive management of solid wastes by ordinance or contract or by both. . . .

The General Assembly has made it abundantly clear that the primary responsibility for adequate solid waste collection, management, treatment, disposal and resource recovery rests with the counties.[30] KRS 109.041 provides in part as follows:

(1) In addition to all other powers enumerated in Chapter 67 and other sections of the Kentucky Revised Statutes, counties, acting by and through their fiscal courts, may own and hold the permit for, plan, initiate, acquire, construct, and maintain solid waste management facilities, enter into contracts or leases with private parties for the design, construction, or operation of a publicly-owned solid waste management facility, and adopt administrative regulations with respect thereto in accordance with this chapter. It is hereby determined and declared that in the implementation, acquisition, financing, and maintenance of solid waste management facilities, and in the enforcement of their use, counties will be performing state functions duly

---

**27.** *See Beavers v. County of Walker,* 645 So.2d 1365, 1375–76 (Ala.1994), for a similar result under Alabama law.

**28.** *See E.M. Bailey,* 676 S.W.2d at 771, "[o]ne test for determining a franchise within the meaning of Section 164 of the Kentucky Constitution can be found in *Willis v. Boyd,* 224 Ky. 732, 7 S.W.2d 216 (1928), when the court

said that a lease can grant a franchise because the lessee obtained a right or privilege not enjoyed by citizens in general."

**29.** *Arnett,* 934 S.W.2d at 273.

**30.** *See* KRS 67.083. *See also* KRS 109.011.

delegated to them for the public welfare....

KRS 224.40–315(1), which sets forth the requirements for obtaining a permit to construct a municipal solid waste disposal facility, provides in relevant part as follows:

> No permit to construct or expand a municipal solid waste disposal facility shall be accepted for processing by the cabinet unless the application contains a determination from the governing body for the solid waste management area in which the facility is or will be located concerning the consistency of the application with the area solid waste management plan submitted under KRS 224.43–345(1)(a) to (d) and (*l*) until January 1, 1993, and the entire plan after January 1, 1993....

As the Supreme Court stated in *Arnett, supra,* "KRS Chapters 67, 109 and 224 establish that the General Assembly has placed in the counties primary responsibility and authority for the exclusive management of solid waste."[31] Accordingly, the Fiscal Court was exercising its governmental, rather than proprietary, function in contracting with BFI for the expansion of its Franklin County landfill.[32]

The fact that BFI proposes to expand its Franklin County landfill on privately-owned property rather than on public property does not alter our conclusion. As was stated by the former Court of Appeals in *Inland Waterways, supra,*[33] "[i]t is the nature of the business, not the title to the land, that fixes its status [under Section 164]. It is the service that is rendered pursuant to an obligation, not the facilities employed, that determines the proper solution of the problem" [citations omitted]. BFI contracted to perform a public function (solid waste disposal) that is statutorily within the jurisdiction of Franklin County. BFI cannot escape the constitutional mandate of Section 164 by choosing to perform that public function on private property.[34]

In summary, we hold that the 2000 Host Community Agreement entered into between BFI and the Fiscal Court granted BFI special privileges not generally available to the public at large to engage in activities which it could not do without a grant from the state. Under Section 164 of the Kentucky Constitution, franchises and special privileges are subject to bidding and advertising requirements, which were not met in this case.

Accordingly, the order of the Franklin Circuit Court granting summary judgment in favor of Huntington is affirmed.[35]

ALL CONCUR.

---

**31.** *Arnett,* 934 S.W.2d at 273.

**32.** *Id.* at 275.

**33.** 13 S.W.2d at 286.

**34.** *Arnett,* 934 S.W.2d at 273.

**35.** Our disposition of this appeal precludes us from reaching the remaining arguments raised by the appellants as they are now moot.