# Louisville & Jefferson County Metropolitan Sewer Dist. et al. v. Town of Strathmoor Village et al.
# Same v. City Of Strathmoor Manor et al.

February 6, 1948.

J. Verser Conner, Gilbert Burnett and John Moremen for appellants.

Robert T. Burke, Sr. and Woodward, Dawson, Hobson & Fulton for appellees.

Opinion of the Court by Stanley, Commissioner—Affirming.

The appellees, Town of Strathmoor Village and City of Strathmoor Manor, are sixth class towns contiguous to Louisville on the southeast. They are separated from each other by the Bardstown Road. The issue to be decided is whether contracts made by the towns with the City of Louisville for connecting and using the city sewerage system as a trunk line outlet for the town systems may be abrogated by the Louisville & Jefferson County Metropolitan Sewer District. Argued points contingent upon the decision that they may be terminated need not be considered.

In 1939, each town proposed to build sewers with the financial aid of the Federal government. It was absolutely necessary that they be connected with the city system for an outlet to the Ohio River, miles away, was impractical and the cost prohibitive. A disposal plant was likewise too expensive and would have been unsatisfactory. The ordinances and two contracts are different in some matters of detail not important here. The preambles are, in substance, that it was deemed expedient and to be to the interest of the public health of its inhabitants that the City of Louisville cooperate in the disposal of the sewerage of the adjacent towns and have their systems built so as to be adaptable to the City system. The contracts contain provisions for the approval of the plans by the Director of Works of Louisville; for the security and protection of holders of bonds to be issued in financing construction in case of annexation. In addition to these general considerations —not only valuable but imperative—the contracts provide that the connections be made at the expense of the towns and for annual "rentals" for the service and use of the city sewers. That of the town of Strathmoor Manor stipulated payment of $320 from the date the connection should be made in 1940 until January 1, 1941, and for annual rentals thereafter for twenty years. The amounts increased from $640 to $1,240 in 1953 and then the average of $960 for the rest of the term. The contract with Strathmoor Village called for the payment for the first two years of indefinite sums, to be calculated upon gross revenues and certain payments having priority, and for the next twenty years

sums increasing each year from $800 to $1,600, the average being $1,200.

In reliance upon these contracts the towns constructed their sewers. The connections with the city system were made, the annual rentals have been paid and the contracts otherwise faithfully performed by both parties.

The Louisville & Jefferson County Metropolitan Sewer District is a public or municipal corporation, with broad powers. They are given by Chapter 76, Kentucky Revised Statutes, and described in Veail v. Louisville & Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S. W. 2d 413; and Louisville & Jefferson County Metropolitan Sewer District v. Joseph E. Seagram & Sons, 307 Ky., 211 S. W. 2d 127, delivered today. The District recently notified the towns that ''the District has determined that all persons using the facilities of the District will be required to pay the charges established when such charges become due and payable, anything in any existing contract to the contrary notwithstanding.''

The judgment in each case declares that the original contract is valid and binding upon the City of Louisville and Metropolitan District. It adjudges that the schedule of service charges established by the district cannot be imposed upon property within the town. The appeals are by the Metropolitan District and the City of Louisville against the towns and a citizen of each as representative of all others.

■ It is submitted by the appellants that the contracts undertake to grant privileges for a period exceeding twenty years, and were, therefore, invalid ab initio because they contravene Section 164 of the Constitution. That section forbids any municipality from granting ''any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years.''

It is not questioned that the building and maintenance of public sewers is a governmental function. It is one of the most certain objects for the exercise of the police power. Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. 2d 761; Francis v. City of Bowling Green, 259 Ky. 525, 82 S. W. 2d 804. The contracts involved have some of the attributes of a privilege, but the rights

conferred do not have the character of a franchise. The ordinances of the City of Louisville recognize the advantages to be gained by its inhabitants as a matter of public health and welfare. They state that the sewers to be used had been designed with sufficient capacity to properly care for the territory embraced by the towns and that adjacent thereto, and that there was then and would continue in the future to be a surplus capacity, so that the connections and use would in no way damage or interfere with the operation of the system or overtax its facilities. The contracts are mutually advantageous to the three municipal corporations. They have added no appreciable burden. They constitute mere rental of a surplus facility. From the monetary standpoint there is no shocking disproportion. The appellants submit data that upon its basis of charges (one-half the users' water bills) and schedule of rates for city property, in the year 1946, the 138 units in Strathmoor Manor would have paid an aggregate of $1,322.64 and the 141 units in Strathmoor Village would have paid $1,316.68. The sums paid by the towns that year were $940 and $950 respectively. But they will increase.

These are contracts such as individuals owning like facilities as private property might have made. It was held in Inland Waterways Company v. City of Louisville, 227 Ky. 376, 13 S. W. 2d 283, that the lease of wharf property for use and development for a period of fifty years was not within the terms of Section 164 of the Constitution because, in part, such a contract is not one which only a governmental body could make in a sovereign capacity.

The contracts cannot be distinguished in principle from that held in Town of Jackson v. Breathitt County, Ky., 105 S. W. 376, 377, 32 Ky. Law Rep. 199, not to be the character of contract embraced by Section 164. The town had granted the right to the county to erect and maintain a bridge across the river running through the town without having complied with the terms of that section, which prescribes the conditions on which a municipality may grant a franchise. Though the county collected tolls and leased the bridge, it was pointed out that: ''The bridge was necessary for the use of the public generally, and for their benefit the county, with the consent of the town, constructed it. Its erection

was as essential for the use of the citizens of the county as those of the town."

We, therefore, hold that these contracts do not violate Section 164 of the Constitution.

■ The decision in these cases might well be put upon the ground that the District has no authority to seize and take over the property of these two municipalities without their consent and without compensation, or to abrogate the contracts under the police power. But it seems to us the statute under which the district was created and now exists does not confer such authority or contemplate such action.

KRS 76.070 provides that the existing sewer and drainage system and facilities of Louisville, "together with all contracts * * * pertaining to or relating to the * * * maintenance, operation, and affairs of such existing sewer and drainage system, shall be assigned, transferred, and dedicated to the use and be in possession, and under the jurisdiction, control, and supervision, of the district * * * and such district is empowered to take possession thereof for its use and purposes." While it may be that when the question shall be directly presented, this provision would have to be declared under the rule of ejusdem generis to mean only the physical possession of the documents, yet in the light of further provisions of the statute it cannot be surely said that this is all. There is an implication that the district must perform all contracts theretofore made by the City. More certain it is from the viewpoint of the appellees that in dealing with the property of incorporated towns the action of the district must meet with their approval. Thus, before the district may construct any facilities of its own within their limits it must have the prior approval of the governing authorities of the towns. KRS 76.080(3). And "in order to promote and protect its activities and facilities, and in furtherance of the public health, the district may enter into contracts with, and thereunder it may permit, other cities, towns * * * to connect with and use the facilities of the district." Furthermore, "the rates for such service and connections shall be such as may be agreed upon between the contracting parties." KRS 76.190.

This last provision destroys the argument of the

348

appellants that the district's acceptance of the rates prescribed in the contracts and its failure to levy its own schedule of charges upon each property-holder in the towns, would give to their inhabitants an "exclusive privilege," and thereby violate Section 3 of the Constitution, which requires equality in public rights and obligations. And, more particularly, the argument that such action on its part would contravene the provision of KRS 76.090 which requires that the schedule of rates or charges promulgated by the district "shall be uniform for all property falling within the same classification."

We are of opinion that the statute—the source of power and authority of the district—when fairly interpreted by a consideration of its tenor and purposes, in association with public policy, deducible from constitutional rights and limitations, requires that these contracts shall be accepted and performed by the parties thereto unless terminated by agreement or according to their terms.

Wherefore the judgments are affirmed.