PUBLIC SERVICE COMMISSION OF
KENTUCKY, Appellant,

v.

DEWITT WATER DISTRICT, Appellee.

EAST CLARK WATER DISTRICT and
Warren County Water
District, Appellant,

v.

PUBLIC SERVICE COMMISSION and
David L. Armstrong, Attorney General,
Division of Consumer Protection, Ap-
pellee.

Supreme Court of Kentucky.

Nov. 26, 1986.

John N. Hughes, Thomas A. Marshall, Frankfort, for Public Service Commission.

James M. Honaker, Frankfort, for Dewitt Water District.

Charles E. English, Murry A. Raines, English Lucas Priest & Owsley, Bowling Green, James W. Clay, Winchester, for East Clark Water District and Warren County Water District.

David L. Armstrong, Atty. Gen., Frankfort, Pamela Johnson, James D. Brannen, Paul E. Reilander Jr., Frankfort, for Attorney General, Division of Consumer Protection.

WINTERSHEIMER, Justice.

These two cases represent a conflict between panels of the Court of Appeals as well as a conflict in the same division of the Franklin Circuit Court. Both Court of Appeals opinions were rendered the same day and recognize that their conflict should be resolved by this Court.

The question is whether the Public Service Commission may disallow a depreciation expense on contributed property when determining the rates of publicly-owned water districts.

The resolution of this question is important and it appears that both sides have

some merit to their respective positions. If depreciation is considered to be the allocation of an investment over a period of time, it could be said that depreciation expenses on contributed property should not be allowed because to allow such an expense would require the customers to, in part, pay again for facilities for which they had already paid in full. On the other hand, failure to allow depreciation for rate-making purposes on contributed property would necessarily cause this property to be utilized only by the present generation and become unavailable as an ongoing asset.

Contributed property is property obtained by the water district either through government grants or directly from customer contributions. Consequently, the water district has title to but no specific investment in the property. No imputed interest expense is claimed. However, for rate-making purposes, the water districts desire to list as an expense depreciation on the contributed properties. The Commission considers depreciation for accounting purposes but not for rate-making.

In the Dewitt case, the circuit court held that depreciation expense on contributed property should be allowed the same as for other property. The court noted that recipients of this contributed property would be limited to the present generation if depreciation expense were not allowed. In the East Clark Water case the circuit court held that the appropriate role of depreciation is to recapture invested capital. Here, the water districts have no investments in these facilities because they are contributed property. Consequently, the circuit court determined that the Commission properly disallowed rate recovery for depreciation expense on contributed property.

There are approximately 115 water districts in the Commonwealth of Kentucky which are nonprofit political subdivisions of county government. They have no investor or private capital. Their rates, as regulated by the Public Service Commission do not generate a return on rate base. The water districts are permitted to earn net revenues based either on a debt services

cost formula or on a percentage of operating expenses known as an operating ratio. Lower operating expenses mean lower rate recovery.

The Dewitt Water District has 83 customers and is a publicly owned utility which has furnished water service in a rural section of Knox County since 1971.

The Warren County Water District has been in existence for 16 years. It has two divisions, a water division and a sewer division. It owns a water treatment plant but also purchases treated water from the city of Bowling Green.

The East Clark Water District provides water services to residential customers living in rural Clark County. It began its operation in March, 1979, and has approximately 300 customers.

The districts argue that the Commission's rate-making determination in regard to a disallowance for depreciation is an unlawful and unreasonable exercise of its regulatory authority and that the regulatory agency has acted in an arbitrary and capricious manner. They also maintain that the customers and the company are virtually one and the same and that they desire to pay rates which are sufficient to provide for the orderly replacement of existing water plant facilities. They contend that there is no question relating to private capital and no outside investors involved in this situation.

The Public Service Commission argues that the depreciation expense should not be allowed and that the order of the Commission be upheld as being in conformity with the law, both statutory and case law. They maintain that the water districts failed to accept the distinction between accounting and rate making and that the criteria for appellate review has been properly met in the East Clark and Warren County cases.

The Attorney General's Consumer Protection Division argues that the Commission properly disallowed depreciation because nonprofit water districts that attempt to charge customers for facilities purchased with grant money and customer

contributions are violating the spirit of the grants and frustrating the governmental intent. In addition the Attorney General contends that the districts are attempting to assess a double charge on tap-on fees and other customer contributions and the result is a confiscation of rate-payer funds in violation of the law.

This Court affirms the decision of the Court of Appeals in the Dewitt water case and reverses the decision in the East Clark and Warren County cases. Depreciation expense on contributed plant property may be considered as an operating expense for rate-making purposes in matters involving publicly held water districts as distinguished from investor-owned companies.

The Public Service Commission's disallowance of rate of recovery for depreciation expense on contributed property was arbitrary, capricious and confiscatory.

The standard of review of commission action is found in KRS 278.410 which provides for judicial review on a showing by clear and convincing evidence that the Commission's order is unlawful or unreasonable. The decision to disregard depreciation expenses on contributed property effectively reduced recoverable revenues for each of the districts involved.

■ It is the responsibility of the reviewing court to protect the parties subject to the regulatory authority of the Commission from arbitrary and capricious action. *Kentucky Power Company v. Energy Regulatory Commission of Kentucky*, Ky., 623 S.W.2d 904 (1981) holds that judicial intervention is permissible only when the reviewing court determines that the Commission has not dealt fairly with the utility. The failure of the Commission to allow a rate recovery for depreciation expense on contributed property could have a substantial impact on the financial stability of the publicly-owned systems and their ability to continue to provide needed water utility services to the rural areas of this state.

The disallowance of depreciation expense on contributed property by the Commission is opposed to its statutory mandate, constitutional prohibitions against confiscation and sound utility management practices.

■ The Commission's denial of rate-recovery for depreciation expense on contributed property is an unlawful act in contravention of statutory and regulatory requirements. KRS 278.220 and the Uniform System of Accounts require the water district to account for depreciation on all classes of depreciable property as an operating expense.

Water districts subject to the regulatory jurisdiction of the commission are required to maintain a uniform system of accounts. KRS 278.220. The applicable system promulgated by the Public Service Commission for water and sewer districts is codified in a regulation manual entitled, "Uniform System of Accounts for Class C and D Sewer Utilities," which became effective October 1, 1979. This manual specifically requires that depreciation of contributed property be accounted for in language identical to the National Association of Railway and Utility Commissioners (NARUC) regulation pertaining to donated property which is in accord with generally accepted accounting principles set forth by the American Institute of Public Accountants.

The uniform system required by the Commission provides that depreciation expense be treated as a utility-operating expense account. Section 403 of the uniform system, entitled Depreciation Expense, provides that the account shall include the amount of depreciation expense for all classes of depreciable utility plant in service. The clear language of the Commission's own regulations draws no distinction between depreciation of contributed and noncontributed plant property. The source of the funds does not affect the properties' status as depreciable or nondepreciable. Consequently, the stated rate-making treatment of depreciation expense on property financed by federal grants and customer contributions is to view the expense the same as for that of noncontributed property.

KRS 278.290 requires the Commission to consider cost of reproduction, among other

factors, in its valuation of plant property for rate-making purposes. The Commission must follow the valuation standards set out in KRS 278.290 so that there will be a check on its assessment of assets and liabilities of utilities subject to its regulation.

KRS 278.290(1) provides the method for valuation of a utility's property for rate-making purposes. The plant to be valued is the plant used to give the service.

There are essentially three methods for evaluating a utility's property. The original cost method uses the cost of utility plant to the person first devoting it to public use. The fair value method examines the fair value of the utility's property in service at the time of the rate inquiry. The reproduction cost method applies the reproduction cost to the utility's existing plant.

 The Commission argues that water districts are not entitled to take depreciation expense on contributed property because Kentucky is an original value state. It cites *Princess Anne Utilities Corporation v. Commonwealth*, 211 Va. 620, 179 S.E.2d 714 (1971) as authority that an original value jurisdiction should not allow depreciation on contributed property. KRS 278.290 provides that Kentucky is not exclusively an original cost jurisdiction. Original cost is only one factor to be considered in valuing the utility's property. The Commission must consider various factors including cost of reproduction as a going concern.

We have previously held that contributed property must be included in valuing the utility plant for purposes of assessing a rate base. Rate base is the value of the facility of a utility employed in providing its services. *City of Covington v. Public Service Commission*, Ky., 313 S.W.2d 391 (1958) held that the Commission's order excluding a federal grant from the city's water plant's rate base was unlawful. We are not convinced by the Commission's attempts to distinguish *City of Covington*, *supra*, on the basis that its holding is limited to "rate base" cases. The concern in *City of Covington* is the proper valuation for public utilities in assessing the revenue requirements needed by the utility. The Commission cannot disregard contributed plant property purchased through federal grants in making its determination. If the Commission must consider all plant property for rate-making purposes, it follows that it must consider all operating expenses incurred in conjunction with the use of the property. Therefore, depreciation expense must be treated uniformly for all plant property thus acquired.

Depreciation is a concern to most enterprises, but it is of particular importance to water and sewer utilities because of the relatively large investment in utility plants required to produce each dollar of annual revenue. Water districts are capital intensive, asset-wasting enterprises. The structure of a water plant, comprised of innumerable components, demands allocation of proper depreciation to ensure financial stability. Adequate depreciation allowance is critical in order to allot to the district sufficient revenue to provide for a replacement fund for all its plant property, contributed or noncontributed.

KRS 74.480 requires the Commission to establish such rates and charges for water as will be sufficient at all times to provide an adequate fund for renewals, replacement and reserves.

This statute indicates the legislative intent that water operations must have sufficient revenues to provide for depreciation. The Commission's reduction of the depreciation expense is in contravention of this legislative directive. Therefore it is an unlawful act.

 The Commission cites no authority for disallowing depreciation of the property of the water district. Reference to a "well-established policy of disallowing depreciation in connection with facilities funded with contributions in aid of construction" is not sufficient. KRS 278.220 provides that regulated utilities shall keep their accounts in a uniform system in accordance with the standards of NARUC. The guidelines of

the Commission define depreciation as "loss in service value not restored by current maintenance" and require that depreciation be treated as an operating expense. KRS 74.480 requires that districts be permitted to charge rates which will provide for adequate depreciation reserves. Consequently depreciation should be allowed as an expense. The Commission's disallowance of depreciation in this situation is unreasonable and amounts to a confiscatory governmental policy.

A determination by the Commission will not withstand judicial review if it is unreasonable pursuant to KRS 278.410. Unreasonable has been construed in a rate-making sense to be the equivalent of confiscatory. This Court has equated an unjust and unreasonable rate to confiscation of utility property. We have declared that rates established by a regulatory agency must enable the utility to operate successfully and maintain its financial integrity in order to meet the just and reasonable nonconfiscatory tests. *See Commonwealth ex rel Stephens v. South Central Bell Telephone Company,* Ky., 545 S.W.2d 927 (1976).

The rates established by the Commission will not generate sufficient revenues to enable the districts to provide for an adequate depreciation account and replacement fund. Disallowance of depreciation expense as a rate recovery permits a substantial portion of the property of the district to be consumed by present customers without requiring the customers to pay for replacement. Approximately 50 percent of Warren County's total utility plant is attributable to federal grants. Sixty-four percent of the East Clark District's plant is attributable to federal grants and customer contributions.

Both state and federal constitutions protect against confiscation of property without regard to the source of acquisition funds. *See Board of Commissioners v. New York Telephone Company,* 271 U.S. 23, 31, 46 S.Ct. 363, 70 L.Ed. 808 (1926).

■ When considering the concept of confiscation, the future as well as the present must be considered. It must be determined whether the rates complained of are yielding and will yield a sum sufficient to meet operating expenses. *See McCardle v. Indianapolis Water Company,* 272 U.S. 400, 47 S.Ct. 144, 71 L.Ed. 316 (1926). Depreciation is uniformly recognized as an operating expense and it is important that the amounts set aside to cover depreciation of public utility property be large enough to replace the property when it is worn out. 64 Am.Jur.2d *Public Utilities* § 182 (1972).

The districts' total plants are wearing out, not just that portion financed by non-contributed funds. The Commission's disallowance of rate recovery of depreciation expense is unreasonable and constitutes a taking of the property of the districts without just compensation.

■ The Commission's disallowance of depreciation expense is not sound utility management practice. The Commission has ignored one of its most important roles which is to provide the lowest possible cost to the rate payer. In refusing to recognize the total depreciation expense, it does not consider the obvious. If the districts do not have sufficient revenues to cover replacement costs, they will be forced to the short-term credit market for funding which will raise the overall cost to the district. The Commission conceded that higher rates were inevitable in the event the districts were forced into the short-term credit market. In the Dewitt case, the Commission expressed its concern over rate case expense. Invocation of the bonding authority provided by KRS 74.300 would undoubtedly escalate the expenses of all the districts involved far beyond the present cost.

Other jurisdictions have recognized the necessity of setting rates sufficient to provide for replacement costs. *Westwood Lake v. Dade County,* Fla., 264 So.2d 7 (1972) held that to arbitrarily disregard that part of a utility's equipment because it was contributed ignores reality and would result in rate increases later when it was necessary to replace the equipment. *Du*

*Page Utility Company v. Illinois Commerce Commission,* 47 Ill.2d 550, 267 N.E.2d 662 (1971) stated in part that depreciation should be allowed because a utility will need to replace from time to time properties which become obsolete in order to sustain customer services.

Therefore in order to properly assess the revenue requirements of water districts, it is critical that the commission consider all of the district's operating expenses. Failure to do so will result in an inaccurate computation of the operating ratio on which the allowable rates hinge and jeopardize the financial integrity and stability of the districts.

It is important to remember that this case involves water districts which are nonprofit utilities organized under Chapter 74 of the Kentucky Revised Statutes. The owners and consuming ratepayers are essentially the same individuals because the districts are political subdivisions of county government. They have no private capital and no corporate investors who must be satisfied as to traditional profits. Their rates do not generate a return on rate base. The water districts are permitted to earn net revenues based on a debt service formula or on an operating ratio computed in accordance with a percentage of operating expenses. Lowering operating expenses means lowering rate recovery.

Water lines are indivisible and not identifiable as to the source of funds used to purchase them. The elements causing depreciation indiscriminately take their toll over time on the service life of all plant facilities. The districts are responsible for making replacements and are obliged by statute to make provisions for future replacements. The purpose of depreciation expense as applied to nonprofit water districts does not relate to a recoupment of investment. The overriding statutory concept is renewal and replacement. The Commission's argument relative to recoupment of investment is without merit and unconvincing.

The Commission is required by statute to treat depreciation as an operating expense to provide an adequate fund for renewals, replacement and reserves. The proper rate-making treatment for depreciation expense of contributed property is to allow depreciation on contributed plant as an operating expense. The fact that the utility did not make an investment in the plant is of no consequence in the context of publicly-owned facilities. The water district must eventually replace this plant which customers are using and the ratepayers are therefore obligated to provide funds for this replacement. The proper rate-making treatment of depreciation expense on property financed by federal grants and customer contributions is to treat the expense the same as that for noncontributed property. *See City of Covington.*

The Commission misinterprets and misapplies *Public Service Commission v. Continental Telephone Co.,* Ky., 692 S.W.2d 794 (1985), which related to job development tax credit, intrastate toll revenues and return on rate base. There was no issue of depreciation expense involved in that case which can be applied here.

Chapter 74, by definition, does not apply to privately owned utilities which have investors to provide needed funds on their behalf in expectation of legitimate monetary dividends. The water districts sole concern is continuous water service to its members and consumers who are one and the same.

*Board of Public Utilities Commissioners v. New York Telephone Co., supra,* held that constitutional protections against confiscation does not depend on the source of money used to purchase the property. It is enough that it is used to render the service.

The propriety of permitting a reasonable depreciation deduction on property of a utility is not dependent on the source of funds for the original construction of the plant. *See DuPage, supra,* and *Langan v. West Keansburg Water Co.,* 51 N.J.Super. 41, 143 A.2d 185 (1958).

Any water district will be required to replace property and plant which have be-

come obsolete or whose useful lives have expired in order to sustain continued service to the customers. Therefore, the utility should be entitled to a reasonable depreciation deduction on its entire plant in-service for the purpose of computing its operating expenses. Depreciation by definition includes only that loss which cannot be restored by current maintenance. *See Lindheimer v. Illinois Bell Telephone Co.*, 292 U.S. 151, 54 S.Ct. 658, 78 L.Ed. 1182 (1934).

The Commission's rate-making determinations in these cases constitute an unlawful and unreasonable exercise of its regulatory authority. It is the holding of this Court that depreciation expense on a publicly-owned water district plant that has been purchased by federal grants and contributions and/or customer tap-on fees should be allowed in the revenue requirement because they have no private investor capital and their rates do not generate a return on rate base. Public water districts rely on internally generated cash flow.

The decision of the Court of Appeals in Dewitt Water District is affirmed. The decision of the Court of Appeals in East Clark County Water District and Warren County Water District is reversed.

All concur, except VANCE, J., who concurs in result only.