# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$



2018-SC-000494-DG

LEDBETTER WATER,DISTRICT

APPELLANT

DATE 2/9/20
A Hutcheson

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2017-CA-000578
LIVINGSTON CIRCUIT COURT NO. 15-CI-00079
HON. CLARENCE A. WOODALL, III

CRITTENDEN-LIVINGSTON WATER DISTRICT

APPELLEE

## MEMORANDUM OPINION OF THE COURT

### REVERSING

The Kentucky Court of Appeals reversed a summary judgment entered by the Livingston Circuit Court which found that a contract entered into between Ledbetter Water District ("Ledbetter") and the Crittenden-Livingston Water District ("Crittenden-Livingston") was void because it violated Kentucky Constitution § 164. After review, we now reverse the Court of Appeals and reinstate the trial court judgment in favor of Ledbetter.

## I.   BACKGROUND

Ledbetter and Crittenden-Livingston are both non-profit water districts organized under Kentucky Revised Statutes ("KRS") Chapter 74. Ledbetter is an unincorporated community located in Livingston County. Crittenden County and Livingston County formed a water company together. In 1988, Ledbetter entered into a four-year agreement with the city of Grand Rivers for Grand Rivers to become Ledbetter's new source of water supply. Ledbetter and Grand

Rivers entered into multiple water purchase agreements between 1988 and 2000. Ledbetter learned that Grand Rivers planned to close their water plant and could no longer supply Ledbetter the amount of water they needed moving forward.

In 1996, the Crittenden-Livingston Board of Commissioners began drawing up plans to expand the Crittenden-Livingston water plant. Crittenden-Livingston marketed water to five local areas within Crittenden and Livingston counties to help fund the expansion. Ledbetter was one of the communities to which Crittenden-Livingston marketed a water supply contract.

In May 1996, the Crittenden-Livingston Superintendent attended a Ledbetter Water Board meeting to present the new plan. Ledbetter then sent a letter to Crittenden-Livingston stating that it wanted to purchase 3,000,000 gallons of water per month from Crittenden-Livingston, at a price of $1.68 per thousand gallons, for an unspecified length of time.

Experiencing delays in the project, it was not until January 17, 2000 that Crittenden-Livingston faxed a proposed contract to the Ledbetter Board for consideration. A week later, the Ledbetter Board approved the proposed contract. Relevant to our review, Ledbetter did not advertise, publicly or privately, for bids before voting to enter into this contract. Under this contract, Ledbetter and Crittenden-Livingston agreed for Crittenden-Livingston to provide and sell a minimum of three million gallons of water per month for a period of forty years. Crittenden-Livingston was also granted the right to install a master meter in a constructed meter housing building on Ledbetter

property and to install water line connections to the Ledbetter water system. Crittenden-Livingston also reserved the right to enter Ledbetter property to read the meter and provide maintenance.

Over the course of the contract, Crittenden-Livingston tried to persuade Ledbetter to purchase more than the minimum 3,000,000 gallons. By 2010, Ledbetter was able to produce some of their water supply at their own plant at a substantially lower cost than the contracted price.

In 2013, Ledbetter sought an opinion from the Kentucky Attorney General's office regarding the legality of the contract between the two entities. Assistant Attorney General Matt James rendered an advisory opinion that the contract was void because it violated Kentucky Constitution § 164. The letter addressed a savings clause within the contract, which would have shifted the term of years from forty to twenty; however, the contract was still deemed void as the contract was not put up for public bid. Ledbetter advised the Crittenden Board of Commissioners of this opinion, which Crittenden-Livingston rejected.

Ledbetter then filed a declaratory judgment action with the Livingston Circuit Court. The trial court determined that the contract was within Ledbetter's authority to make; however, because the contract granted a franchise and was in excess of twenty years, it was void under the Kentucky Constitution.

The Court of Appeals reversed the Livingston Circuit Court holding that because the contract involved two public entities, the franchise provision and

3

the public bidding requirements of the Kentucky Constitution did not apply. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is only proper "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at trial warranting a judgment in his favor and against the movant."[1] Because the grant of summary judgment does not involve fact-finding, our standard of review is *de novo*.[2]

## III. ANALYSIS

First, we review how the Kentucky Constitution applies to the facts before us. Ky. Const. § 162, states,

> No county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void.

Ky. Const. § 164, Term of Franchises, states:

> No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, **such municipality shall first, after due advertisement, receive bids therefor publicly**, and award the same to the highest and best bidder; but it

---

[1] *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985) (quoting *Roberson v. Lampton*, 516 S.W.2d 838, 840 (Ky. App. 1974)).

[2] *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

4

shall have the right to reject any or all bids. This
section shall not apply to a trunk railway.

(emphasis added). Therefore, when examining the requirements set out in the
Kentucky Constitution, we review both § 162 and § 164.

We must also determine the meaning of a "franchise." In *E.M. Bailey
Distributing Co., Inc. v. Conagra, Inc.,*[3] the Lyon County Riverport Authority had
granted Conagra, a private company, use of a grain loading facility on public
property. E.M. Bailey, a competing private company, filed suit to challenge the
legality of the agreement under § 164 because the riverport authority did not
advertise for competitive bidding. Our Court defined a franchise as follows: "A
franchise is generally defined as a right or privilege granted by a sovereign
power, government or a governmental entity to a party to do some act which
such party could not do without a grant from the government."[4] Furthermore,
a franchise is a grant of a right to use public property or at least the property
over which the granting authority has control.[5] The Court held that the
"riverport authority holds title to the land and the improvements in an absolute
trust for all the people of Lyon County. Such a public asset cannot be disposed
of without due advertising, competitive bidding and process mandated by the
Kentucky Constitution § 164."[6]

---

[3] 676 S.W.2d 770 (Ky. 1984).

[4] *Id.* at 771.

[5] *Young v. City of Morehead,* 233 S.W.2d 978 (Ky. 1950).

[6] *E.M. Bailey,* 676 S.W.2d at 773.

Crittenden-Livingston argues that it is impossible that Ledbetter is empowered to grant a franchise because it is an extension of Livingston County, one of the two participating counties of Crittenden-Livingston. Additionally, Crittenden-Livingston argues that this claim involves one public entity acquiring the services of another public entity, and therefore does not require a franchise and public bidding.

In reviewing *Public Service Commission of Kentucky v. Dewitt Water District*, this Court provided insight to the issue of an unincorporated city water district.[7] Dewitt is an unincorporated city in Knox County, Kentucky. The *Dewitt* court held that an unincorporated city water district is a division of the county's government stating: "There are approximately 115 water districts in the Commonwealth of Kentucky which are nonprofit political subdivisions of county government."[8] This Court continued:

> It is important to remember that **this case involves water districts which are nonprofit utilities** organized under Chapter 74 of the Kentucky Revised Statutes. The owners and consuming ratepayers are essentially the same individuals because **the districts are political subdivisions of county government**.[9]

Crittenden-Livingston argues that Ledbetter has no authority to grant or deny it a franchise as it is not a county, city, town, taxing district, or other municipality under Ky. Const. § 164. However, water districts have long been

---

[7] 720 S.W.2d 725 (Ky. 1986).

[8] *Id.* at 727.

[9] *Id.* at 731. (emphasis added).

held to be political subdivisions, and therefore observe the same formalities required of counties and municipalities to contract.[10]

Crittenden-Livingston argues that unlike *E.M. Bailey*, the claim here involves two public entities; not a public entity and private party. They argue that this distinction means that the contract cannot be a franchise. Crittenden-Livingston claims that this is not a franchise agreement, as it did not grant governmental rights or privileges that Crittenden-Livingston did not already possess.

By dissent, Chief Justice Minton cites *Inland Waterways Co. v. City of Louisville*, where a lease involving property held by the City of Louisville was given to a private corporation to be used for wharf purposes.[11] However, as pointed out specifically within *Inland Waterways* and by our court in *E.M. Bailey*, *Inland Waterways* is factually distinguishable because the lease granted Inland Waterways Co. only temporary use of the property, and the City of Louisville retained a recapture provision allowing it to recover the wharf at any time.[12]

> *Inland Waterways, supra,* cited in support of respondents' position, is distinguishable from the facts in this case because it involved a lease by the City of Louisville of property held by it, but not being used for, wharf purposes. The lease granted only a temporary use of the property and the City could recover it at any time it was needed for wharf purposes. This Court held that the lease was not a franchise, noting that the

---

[10] *Louisville Extension Water Dist. v. Diehl Pump & Supply Co.*, 246 S.W.2d 585, 586 (Ky. 1952).

[11] 13 S.W.2d 283, 284-286 (Ky. 1929).

[12] *E.M. Bailey*, 676 S.W.2d at 772.

recapture provisions in the lease were wholly incompatible with the idea of a fixed right for a definite term.

Here Conagra is permitted a fixed right to use the grain facilities as needed by it for a definite term of five years. The authority cannot regain the grain facility once Conagra has given the required notice and cannot in any event ever recapture the operational area adjacent thereto over which Conagra has been granted absolute exclusive control.

In considering this matter, it is useful to distinguish a franchise from a license. A license in respect to real property can be defined as a personal privilege to do acts upon the land of the licensor of a temporary nature which are revocable at the will of the licensor. A franchise is neither temporary or personal and it is not revocable at the will of the grantor. *See* 36 Am.Jur.2d § 2, *Franchises;* cf. *Owensboro v. Cumberland Tel. & Tel. Co.,* 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389 (1913).[13]

Analogous to our present case, in *E.M. Bailey,* Conagra was permitted a fixed right to use the grain facilities for a definitive term, there was no recapture provision included and Conagra was granted exclusive control over the facilities.[14]

Here, the contract did in fact grant Crittenden-Livingston rights they would not have possessed without the contract with Ledbetter. The Crittenden-Livingston Water District encompassed areas within Crittenden and Livingston counties; however, it did not include the Ledbetter district. With the agreement, Crittenden-Livingston was permitted to install connecting water lines and a master meter with valves, to maintain a building on the Ledbetter

---

[13] *Id.*

[14] *Id.*

8

water tower property so as to gain access to the Ledbetter master meter and was granted rights to enter the Ledbetter facility for readings and maintenance. The contract also granted Crittenden-Livingston the right to use Ledbetter's water system infrastructure to transport a minimum of 3,000,000 gallons of water each month to fulfill the terms of the contract by selling water to Ledbetter.

Justice VanMeter's dissent notes that pursuant to KRS 74.070(1) a water district is authorized to "make contracts for the water district with municipalities and other persons." He concludes this is just a contract between the two public entities while a franchise is implemented where a water district contracts with a private entity to create infrastructure, deliver water to citizens and then direct bills those citizens. However, in KRS 96.120(1) the legislature refers to a contract such as the one before us as a franchise: "Any city that owns and operates its own water or light plant may acquire a franchise to furnish water and light to any other city, in the same manner that any private corporation or individual may acquire such a franchise." Although the statute refers to a water supply arrangement between two cities, there's no reason the rule would be different for two water districts, which as noted are political subdivisions of county government.

On October 5, 1981, Honorable Martin W. Johnson, City Attorney for Benton, Kentucky, requested an opinion from the Office of the Attorney General ("OAG") as to whether two public entities could enter into a forty year

contract as was required by the lender.[15]   Under the contract the City of

Benton planned to furnish water to the City of Hardin.[16]   The contract in

question included a proposed term of forty years.   In response, the OAG made

the following recommendation:

> We initially refer you to KRS 96.120, which reads as follows: "Any city may acquire a franchise to furnish water and light to any other city, in the same manner that any private corporation or individual may acquire such a franchise."
>
> The above statute authorizes the proposed sale of water between the cities of Benton and Hardin. However, such a contract would necessarily be in the nature of a franchise acquired in this instance by the City of Benton from the City of Hardin and would be governed, in our opinion, by Section 164 of the Constitution. As you know, this section prohibits any franchise from exceeding twenty years and at the same time requires that it be let on a bid basis, though from a practical standpoint, in this instance, there would only be one bidder. Nevertheless, we believe that the terms of Section 164 must be complied with.[17]

Much like the OAG opinion rendered regarding the contract between the cities

of Benton and Hardin, in the present case we have an analogous OAG advisory

opinion stating that the contract between Ledbetter and Crittenden-Livingston

was void because it violated Kentucky Constitution § 164.

Crittenden-Livingston relies on *Southeast Bullitt Fire Protection District v.*

*Southeast Bullitt Fire and Rescue Department,* a dispute between public entities

---

[15] 1980-1981 Ky. Op. Atty. Gen. 2-883 (Ky. A.G.), Ky. OAG 81-365, 1981 WL 142437.

[16] *Id.*

[17] *Id.*

10

in Bullitt County.[18] That contract dispute involved a volunteer fire department that provided non-utility fire protection services in the district's area. The *Bullitt* court held, "The District is correct that the fire protection contract was not publicly advertised; however, the Fire Department argues that it provides a "professional service" and no public bidding was required. The trial court held that the Fire Department provided **professional services** and we agree with that conclusion."[19] This decision is factually distinguishable from the present case. Here we have a franchise granted for providing water utilities, rather than a contract for professional services. Since 1896 it has been held that a utility contract regarding water supply is a franchise, and pursuant to the Kentucky Constitution, a franchise or privilege that was not advertised and publicly bid is void pursuant to § 164.[20]

Since the contract entered into by Ledbetter and Crittenden-Livingston was both for a term of greater than twenty years and was not advertised for public bidding, it violates the Kentucky Constitution and applicable statutes and, thus, is void. We reverse the Court of Appeals and reinstate the Livingston Circuit Court grant of summary judgment.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J., sitting. Nickell, J., not sitting.

---

[18] *Southeast Bullitt Fire Prot. Dist. v. Southeast Bullitt Fire and Rescue Dep't.*, 537 S.W.3d 828 (Ky. App. 2017).

[19] *Id.* at 831 (emphasis added).

[20] *Nicholasville Water Co. v. Bd. of Councilmen of Town of Nicholasville*, 36 S.W. 549 (Ky. 1896).

Hughes, Keller, Lambert and Wright, J.J., concur. Minton, C.J. dissents with separate opinion in which VanMeter, J., joins. VanMeter, J. dissents with a separate opinion in which Minton, C.J., joins.

MINTON, C. J., DISSENTING: I agree with the result reached by Justice VanMeter's dissenting opinion[21] but write separately to express an additional point that, in my view, is a critical point under these facts. Ledbetter argues, in part, that the contract was a franchise because it granted to Crittenden-Livingston the right to use the real property of Ledbetter. Specifically, the contract gave Crittenden-Livingston the right to use Ledbetter property to install a water line and meter and to erect a building to house the meter. But while the granting "of a right to use public property or at least the property over which the granting authority has control"[22] may be an attribute of a franchise, that fact alone does not render the granting of a lease a franchise. The nature of the public property and the activity being conducted on the property must be considered.

For example, in *Inland Waterways Co. v. City of Louisville*, our predecessor court found that a lease given to a private corporation by the City

---

[21] The point in Justice VanMeter's dissent, that the right to produce and sell water to a water district is not the prerogative of the government, and a franchise is therefore not required to grant such a right, is supported by our case law. *See Young v. City of Morehead*, 233 S.W.2d 978, 980 (Ky. 1950) ("The right to produce and sell gas is not a prerogative of a government but is a business open to all, therefore, Young was not exercising a franchise when he contracted to sell and deliver his gas to the City at its corporate limits."); *City of Princeton v. Princeton Electric Light & Power Co.*, 179 S.W. 1074, 1077 (Ky. 1915) ("The right to produce and sell electricity as a commercial product is not a prerogative of a government, but is a business which is open to all, and for that reason is not a franchise.").

[22] *E.M. Bailey Distributing Co., Inc., v. Conagra, Inc.*, 676 S.W.2d 770, 771 (Ky. 1984) (citing *Young*, 233 S.W.2d 978).

12

of Louisville upon real property held by the City was not a franchise requiring advertisement and competitive bidding under Section 164.[23] More specifically, the contract in that case leased to the Inland Waterways Company, for a fixed term, two separate tracts of land abutting the Ohio River with the express purpose that the lessee develop the parcels to be used as a wharf.[24] The lease had been challenged as an invalid franchise under Section 164.[25]

The Court explained that a franchise of the type contemplated by Section 164 "is generally understood to designate and denote a right or preference conferred by law which may be granted only by the sovereign, and not by individuals generally."[26] The Court went on to explain that such a right may not be conveyed by a lease even if the lease provides for the use of land held by the government.[27] It is instead the nature of the right being conveyed—whether it confers some special privilege not belonging to the public—that ultimately determines whether a franchise has been created.

The Court concluded that the lease at issue did not confer any special privilege exclusive to the City of Louisville but instead conferred only the right to operate a private wharf on the lessor's land—a right that could have been conveyed by any private entity.[28] The fact that the City of Louisville held title to

---

[23] 13 S.W.2d 283, 284–86 (Ky. 1929).

[24] *Id.* at 285.

[25] *Id.*

[26] *Id.*

[27] *See id.* at 286.

[28] *See id.* at 286–87.

the land did not change the nature of that right. The city was simply conveying the right to use land as other private individuals may do.[29]

Likewise, the Ledbetter lease at issue does not involve a right that may be granted only by the sovereign but instead involves a right that may be conferred by private individuals generally—the right to produce and sell water and construct water lines and meters on the lessor's property—as Justice VanMeter properly notes. The fact that Ledbetter holds title to the property does not change the nature of this right. Leases identical to this one could be executed by any private entity.

As such, I would hold that the lease is not void for granting a franchise or privilege without allowing competitive bidding under Section 164. I would affirm the decision the Court of Appeals for the reasons I have stated. VanMeter, J., joins.

VanMeter, J., DISSENTING: Respectfully, I dissent. The majority's analysis of Section 164 of the Kentucky Constitution fails to recognize that the water districts in question entered into a simple contract for the sale of water from one district to the other, thus removing any contract for services between Ledbetter and Crittenden-Livingston from Section 164's provisions regarding franchises. "A franchise is generally defined as a right or privilege granted by a sovereign power, government or a governmental entity to a party to do some act

---

[29] *See id.* at 287 (citing Ky. Stats. § 2742; *Carrollton Furniture Mfg. Co. v. City of Carrollton*, 47 S.W. 439 (Ky. 1898)); *Board of Councilmen of the City of Frankfort v. Pattie*, 12 S.W.2d 1108 (Ky. 1928)) ("A municipal corporation may be the owner of land and may control, use, lease, and dispose of it as other proprietors may do.").

14

which such party could not do without a grant from the government." *E.M. Bailey Distrib. Co. v. Conagra, Inc.*, 676 S.W.2d 770, 771 (Ky. 1984).

In the context of public utilities, such as waterworks, a franchise is implemented if a water district contracted with a private entity to carry out the water district's duties in creating infrastructure, delivering water to the district's citizens, and billing them directly. However, under the present arrangement, Ledbetter is simply purchasing water from an adjacent water district—not to franchise the supplying of water to Ledbetter citizens—but to add to Ledbetter's existing, limited supply held in its water tower. This Court has held, under similar factual circumstances related to two non-profit government entities contracting for services, "[t]he contracts involved have some of the attributes of a privilege, but the rights conferred do not have the character of a franchise. * * * The contracts are mutually advantageous to the three municipal corporations. They have added no appreciable burden. They constitute mere rental of a surplus facility." *City of Russell v. City of Flatwoods*, 394 S.W.2d 900, 902 (Ky. 1965) (quoting *Louisville & Jefferson Cnty. Metro Sewer Dist. v. Strathmoor Village*, 307 Ky. 343, 345–46, 211 S.W.2d 127, 129 (1948)).

Under KRS 74.070(1), Ledbetter's commission "may make contracts for the water district with municipalities and other persons." Ledbetter's contract with Crittenden-Livingston was simply fulfilling Ledbetter's statutory duty to provide water to its citizens, not through a franchise, but through a contract for an amount of water to be added to Ledbetter's own supply. Much like the

15

sewer services contracts between the three municipal corporations in *Strathmoor Village*, "[t]hese are contracts such as individuals owning like facilities as private property might have made." 307 Ky. at 346, 211 S.W.2d at 129. Thus, Ledbetter should be free to contract with Crittenden-Livingston for the provision of external water resources without implication of the franchise prohibition and requirements of Section 164.

Minton, C.J., joins.

COUNSEL FOR APPELLANT:

Van Franklin Sims
Paducah, Kentucky

COUNSEL FOR CRITTENDEN-LIVINGSTON WATER:

Robert Bartley Frazer
Marion, Kentucky

COUNSEL FOR KENTUCKY RURAL WATER ASSOCATION, INC, AMICUS CURIAE :

Damon R. Tally
Hodgenville, Kentucky

Stephen A. Sherman
Louisville, Kentucky

# Supreme Court of Kentucky

## 2018-SC-000494-DG

LEDBETTER WATER DISTRICT                       APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.               CASE NO. 2017-CA-000578
LIVINGSTON CIRCUIT COURT NO. 15-CI-00079

CRITTENDEN-LIVINGSTON WATER           APPELLEE
DISTRICT, ET AL.

## ORDER DENYING PETITION FOR REHEARING
## AND FOR MODIFICATION OR EXTENSION OF OPINION

Appellee's Petition for Rehearing and for Modification or Extension of the Opinion of the Court, rendered February 20, 2020, is DENIED.

Minton, C.J.; Hughes, Keller, Lambert and Wright, JJ., concur.

VanMeter, J., would grant the Petition for Rehearing. Nickell, J., not sitting.

ENTERED: July 9, 2020.

_____
CHIEF JUSTICE